UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————————

NORMAN WHITEHEAD,

                                        Petitioner,

                                                              9:18-CV-1436
v.                                                            (LEK/TWD)

J. LAMANNA,

                                        Respondent.
———————————————————————————

APPEARANCES:                              OF COUNSEL:

RICHARD D. WILLSTATTER, ESQ.
Attorney for Petitioner
Green, Willstatter Law Firm
200 Mamaroneck Avenue, Suite 605
White Plains, New York 10601

LETITIA JAMES, ESQ.                       LISA E. FLEISCHMANN, ESQ.
Attorney General of the State of New York
Attorney for Respondent
28 Liberty Street
New York, New York 10005


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### **ORDER AND REPORT-RECOMMENDATION**

        Norman Whitehead ("Petitioner") challenges his New York State convictions under 28

U.S.C. § 2254.  (Dkt. No. 1.)  Petitioner seeks relief under the theory that he was denied effective

assistance of appellate counsel in violation of the Sixth Amendment to the United States

Constitution.  (*Id.*; Dkt. No. 12.)  Respondent opposes the petition.  (Dkt. No. 5.)  For the

following reasons, the Court recommends denying the petition, and declining to issue a

Certificate of Appealability.

# I.    BACKGROUND[1]

Petitioner is serving a 23-year sentence for the possession, purchase, and sale of drugs on February 27, 2011.  (Dkt. No. 6-2 at 6-125; Dkt. No. 6-6 at 22-23; Dkt. No. 7-10 at 8-11;[2] *see also People v. Whitehead*, 130 A.D.3d 1142, 1143 n.1 (3d Dept 2015), *aff'd*, 29 N.Y.3d 956 (2017).)

In 2010 and 2011, investigators with the New York State Attorney General's Organized Crime Task Force and the Albany Police Department (collectively "the investigators") used an eavesdropping warrant to overhear conversations between individuals suspected of purchasing and selling narcotics.  (Dkt. No. 6 at 110-38, 210-21, 229-40.)  On February 11, 2011, the warrant was "Extended and Amended" to permit the investigators to tap Petitioner's phone. (Dkt. No. 6 at 210-15.)  The investigators subsequently intercepted Petitioner's conversations, text messages, and cell tower location data.  (Dkt. No. 6 at 294-334, 342-49, 351-61; Dkt. No. 6-5 at 118-37, 157-64.)  Based upon what they intercepted, the investigators suspected Petitioner had purchased, processed, and sold narcotics.  (Dkt. No. 6-2 at 342, 346-51.)

On June 8, 2011, the investigators charged Petitioner and 36 other individuals in a 278-count indictment, accusing them of committing various drug-trafficking crimes.  (Dkt. No. 6-2 at 6-125.)  A grand jury in Albany County, New York, returned the 278-count indictment on August 1, 2012.  *Id.*  Petitioner was charged with eleven of the counts: conspiracy in the second degree (Count 1); criminal possession of a controlled substance in the second degree (Count 225); criminal possession of a controlled substance in the third degree (Counts 226 and 229);

---

[1] The Court assumes the parties' familiarity with the extensive underlying proceedings and summarizes the record only to the extent necessary for this Court's habeas review.

[2] Citations to page numbers in the filings refer to the pagination CM/ECF automatically generates.

criminal sale of a controlled substance in the first degree (Count 227); criminal possession of a

controlled substance in the first degree (Count 228); criminal sale of a controlled substance in the

third degree (Counts 224, 232, 244, and 245); and attempted criminal possession of a controlled

substance in the third degree (Count 242). *See id.* Before trial, the prosecution dismissed counts

224 and 242. (Dkt. No. 6 at 370-72; *see also Whitehead*, 130 A.D.3d at 1142-43.)

Under Count 1, conspiracy in the second degree, Petitioner was alleged to have sold

drugs to other members of the conspiracy on March 1, 2011, and purchased drugs from other

members of the conspiracy on February 27, 2011. (Dkt. No. 6-2 at 7-15.) This conduct

allegedly occurred in "Albany County, Bronx County, New York County, Orange County,

Saratoga County, Schenectady County, Rensselaer County, Ulster County, and elsewhere in the

State of New York." (Dkt. No. 6-2 at 8.) Counts 225, 226, 227, 228, and 229 pertain to

Petitioner's alleged possession, attempted possession, attempted sale, and sale of drugs in

Schenectady County, New York on February 27, 2011. (Dkt. No. 6-2 at 104-106.) Count 232

pertains to Petitioner's alleged sale of drugs in Albany County, New York on February 27, 2011.

(Dkt. No. 6-2 at 107.) Count 244 involves Petitioner's alleged sale of drugs in Schenectady

County, New York on April 2, 2011, and Count 245 involves his alleged sale of drugs in Albany

County, New York on April 9, 2011. (Dkt. No. 6-2 at 112-13.) In short, according to the

investigators, most of Petitioner's alleged criminal conduct (i.e. Counts 225, 226, 227, 228, 229)

occurred on February 27, 2011, in Schenectady County, New York. (Dkt. No. 6-2 at 104-106.)

Following a jury trial, Petitioner was convicted on all counts and sentenced to an

aggregate term of 29 years in prison. (Dkt. No. 6-6 at 22-23; Dkt. No. 7-10 at 8-10.) Petitioner

appealed to the Appellate Division, Third Department, where appellate counsel raised numerous

arguments. (Dkt. No. 6 at 11-70; *see generally Whitehead*, 130 A.D.3d 1142.) First, appellate

counsel argued Petitioner's convictions for Counts 225, 226, 228, and 229 were unsupported by legally sufficient evidence and were against the weight of the evidence. *See Whitehead*, 130 A.D.3d at 1144-45. The Court rejected these arguments, concluding the convictions were "supported by legally sufficient evidence and are not against the weight of the evidence." *Whitehead*, 130 A.D.3d at 1144.

Second, appellate counsel argued Counts 227, 232, 244, and 245 were duplicitous, unsupported by sufficient evidence, and against the weight of the evidence. *Id.* at 1143-44. The Court concluded the argument about the counts being duplicitous "was preserved only as to count 232 and, in any event, [wa]s unpersuasive as to all the sale counts." *Id.* at 1143. However, the Court agreed with appellate counsel that Petitioner's "convictions on counts 244 and 245 [we]re not supported by the weight of the evidence," and reversed Petitioner's convictions on those counts. *Id.* at 1143-43.

Third, appellate counsel argued that Count 1 was duplicitous, was unsupported by sufficient evidence, and was against the weight of the evidence. *Id.* at 1143-44. The Court rejected each of these arguments, concluding the duplicitous argument was unpreserved, and Petitioner's conviction for Count 1 "was supported by legally sufficient evidence and [was] not against the weight of the evidence." *Id.* at 1143-44. According to the Court, the prosecution presented legally sufficient evidence "by the combination of, among other proof, the extensive phone records, the explanation of the drug-related street language used therein, coinciding transactions (some observed by police), and testimony of cooperating witnesses who had been participants in various transactions." *Id.* at 1145.

Fourth, appellate counsel argued the trial court erred in denying Petitioner's motion to suppress all evidence procured because of defective eavesdropping warrants. *Id.* at 1145. The

Court concluded this theory "was unpreserved . . . and, in any event, [the] Supreme Court did not err in denying such motion." *Id.* The Court also rejected appellate counsel's arguments concerning grand jury improprieties, the prosecutor's opening and closing statements, the trial court's failure to give a circumstantial evidence jury instruction, and the severity of Petitioner's sentence. *Id.* at 1145-46.

Appellate counsel subsequently sought review before the Court of Appeals of New York, which granted leave to appeal. (Dkt. No. 6-3 at 97.) The Court of Appeals rejected appellate counsel's arguments that Petitioner's convictions on Counts 1, 225, 226, 227, 228, 229, and 232 were unsupported by legally sufficient evidence. *People v. Whitehead*, 29 N.Y.3d 956, 958 (2017). According to the Court, "[t]he People presented sufficient evidence in the form of, among other things, defendant's intercepted phone calls replete with drug-related conversations, visual surveillance, and the testimony of cooperating witnesses." *Id.* The Court concluded appellate counsel's "remaining legal sufficiency claims, including his challenge to the People's proof concerning the weight of the drugs, [we]re unpreserved." *Id.*

The Court also rejected appellate counsel's challenge to the prosecution's statements during opening arguments and concluded the "challenge to the People's summation [wa]s unpreserved." *Id.* The Court rejected appellate counsel's challenges to the grand jury proceeding and the trial court's refusal to issue a circumstantial evidence jury charge, concluding such arguments were "without merit." *Id.* The Court also held, "[a]s to defendant's remaining claims, we agree with the Appellate Division that, to the extent they are preserved, defendant's claims are without merit." *Id.* The Court did not identify which arguments it deemed preserved and which it deemed unpreserved. *See id.*

Petitioner subsequently moved for a writ of error coram nobis before the Appellate Division, Third Department.  (Dkt. No. 6-5 at 235-68, 454-92.)  Through counselled and *pro se* motions, Petitioner argued his right to the effective assistance of counsel was violated by appellate counsel's failure to argue: (1) trial counsel's previous representation of a key prosecution witness presented a conflict of interest; (2) the trial court erred in permitting the prosecution to amend Counts 227, 228, and 229 during trial; (3) the indictment was impermissibly amended through the prosecution's summation and the trial court's jury instructions; and (4) trial counsel was ineffective for failing to: (a) move to dismiss as facially defective Counts 225, 226, 227, 228, 229, and 244 because they did not allege Petitioner's conduct had a particular effect in Albany County; (b) argue that the eavesdropping warrants were procedurally and substantively defective; and (c) move to dismiss Counts 225, 227, and 228 because the prosecution had failed to prove the aggregate weight of the illegal drugs. (Dkt. No. 6-5 at 240-49, 472-90.)

The Appellate Division, Third Department denied Petitioner's motion on September 7, 2018.  (Dkt. No. 6-6 at 24.)  The Court of Appeals denied Petitioner's request for leave to appeal on November 15, 2018.  (Dkt. No. 6-5 at 30.)  Petitioner now seeks a writ of habeas corpus under 28 U.S.C. § 2254 on the grounds that he received ineffective assistance of appellate counsel. (Dkt. No. 1.)

## II.    LEGAL STANDARDS

### A.    Habeas Petitions under 22 U.S.C. § 2254

Congress provided federal district courts with jurisdiction over applications for writs of habeas corpus (i.e., habeas petitions) under 28 U.S.C. § 2241 *et seq.*  That jurisdiction extends to a habeas petition "[o]n behalf of a person in custody pursuant to the judgment of a State court

only on the ground that he is in custody in violation of the Constitution of the laws or treaties of the United States."  28 U.S.C. § 2254(a); *see also Harrington v. Richter*, 562 U.S. 86, 97 (2011).[3]

A petitioner aiming to secure such relief must satisfy several prerequisites.  *See* 28 U.S.C. § 2241(c), § 2244, §§ 2254(a)-(b); *see also Aparicio v. Artuz*, 269 F.3d 78, 89-90 (2d Cir. 2001) (discussing the statute of limitations, exhaustion, and procedural default); E. Chemerinsky, Federal Jurisdiction § 15.4, p. 964-86 (7th ed. 2016) (hereinafter Chemerinsky) (discussing habeas prerequisites).  He must demonstrate he is "in custody."  28 U.S.C. § 2241(c); *see also* Chemerinsky at 977-85.  He must demonstrate his petition is timely and is not "a second or successive habeas corpus application."  28 U.S.C. §§ 2244(a)-(b), (d); *see also* Chemerinsky at 964-68.  And he must demonstrate he has exhausted State court remedies.  *See id.* at § 2254(b); *see also Harrington*, 562 U.S. at 103.[4]

"Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011); *see also Rose v. Lundy*, 455 U.S. 509, 518 (1982) (discussing exhaustion).  "In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court."  *Daye v. Attorney Gen.,* 696 F.2d 186, 191 (2d Cir. 1982) (en banc).  A state court decision qualifies as an

---

[3] Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted.  *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

[4] Here, it is undisputed that Petitioner is in custody, his petition is timely, and this is his first petition.  (*Compare* Dkt. No. 1 at 1-3, 12-13, *with* Dkt. No. 5 at 2; *see generally* Dkt. No. 5-1 at 20-39.)

adjudication on the merits even if the court does not mention a particular claim or explain the reasons for rejecting it. *Barnes v. Burge*, 372 F. App'x 196, 198-99 (2d Cir. 2010); *see also Johnson v. Williams*, 568 U.S. 289, 293 (2013); *Aparicio*, 269 F.3d at 94. Accordingly, habeas petitioners in custody pursuant to a New York State court conviction can exhaust their claims of ineffective assistance of appellate counsel through a coram nobis petition even where the New York State appellate courts reject the petition without explanation. *See Chrysler v. Guiney*, 806 F.3d 104, 117 (2d Cir. 2015); *see, e.g.*, *Allen v. Artus*, No. 6:17-CV-6074 (CJS), 2020 WL 6785498, at *12 (W.D.N.Y. Nov. 18, 2020); *Nedd v. Bradt*, No. 13-CV-5569 (CLP), 2019 WL 2124889, at *18 (E.D.N.Y. May 15, 2019); *Chicherchia v. Griffin*, No. 9:16-CV-1027 (NAM)(ATB), 2017 WL 9511171, at *6 (N.D.N.Y. May 22, 2017), *report and recommendation adopted*, 2017 WL 2819816 (N.D.N.Y. June 29, 2017); *Cumberland v. Graham*, No. 08-CIV-04389 (LAP)(DF), 2014 WL 2465122, at *33 (S.D.N.Y. May 23, 2014).[5]

"If a habeas applicant fails to exhaust state remedies . . . [this Court] must deem the claim procedurally defaulted." *Carvajal*, 633 F.3d at 104. This Court also deems a claim procedurally defaulted when a state court rejects the claim on independent and adequate procedural grounds. *Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Downs v. Lape*, 657 F.3d 97, 102 (2d Cir. 2011). "[W]here a state court explicitly says that a particular claim fails for a procedural reason, but still reaches the merits, that claim remains procedurally barred." *Galdamez v. Keane*, 394 F.3d 68, 77 (2d Cir. 2005) (Sotomayor, Circuit Judge). Procedurally defaulted claims are barred in federal court unless petitioner can show cause for the default and prejudice from a violation of federal law. *Martinez*, 566 U.S. 1, 10; *Harrington*, 562 U.S. 86, 103. Unless a petitioner can

---

[5] Here, the parties agree that Petitioner exhausted his claims of ineffective assistance of appellate counsel. (*Compare* Dkt. No. 1 at 1-3, 12-13, *with* Dkt. No. 5 at 2; *see generally* Dkt. No. 5-1 at 20-39.)

show cause and prejudice, or actual innocence, "dismissal of an application for habeas relief on the ground of procedural default amounts to a disposition of the habeas claim on the merits." *Carvajal*, 633 F.3d at 104; *see, e.g.*, 22 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

When a state court has adjudicated the habeas petitioner's claim on the merits, this Court applies a deferential standard of review. 28 U.S.C. § 2254(d); *see also Woods v. Etherton*, 578 U.S. 113, 116-17 (2016); *Tavarez v. Larkin*, 814 F.3d 644, 650 (2d Cir. 2016). Under this deferential standard of review, habeas relief is available to a petitioner only if "the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Woods*, 578 U.S. at 116 (quoting 28 U.S.C. § 2254(d)(1)).

"A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell*, 535 U.S. at 694. "The focus of the [unreasonable application] inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable." *Id.*; *see also Aparicio*, 269 F.3d at 94 (explaining that an incorrect application of the law might be unreasonable if the state court's application "reflect[s] some additional increment of incorrectness"). In other words, "[a] state court's determination that a claim lacks merit

precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101; *see also Woods*, 578 U.S. at 117 ("The state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

### B.    Ineffective Assistance of Appellate Counsel

The Sixth Amendment commands that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI. "The Sixth Amendment guarantees the right to effective representation on direct appeal."  *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (citing *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985)). "Although it was born in the context of ineffective assistance of trial counsel, *Strickland's* two-prong test applies equally to claims of ineffective assistance of appellate counsel on a defendant's first appeal as of right."  *Aparicio*, 269 F.3d at 95; *see generally Strickland v. Washington*, 466 U.S. 668, 697-98 (1984).  "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105; *see also Chrysler*, 806 F.3d at 118 (explaining that the fundamental question becomes "whether there is a reasonable argument that [petitioner's] counsel satisfied *Strickland's* deferential standard").  "The *Strickland* standard, then, is the relevant 'clearly established Federal law, as determined by the Supreme Court of the United States' in this case." *Aparicio*, 269 F.3d at 95.  A petitioner "is not required to further demonstrate that his particular theory of ineffective assistance of counsel is also clearly established."  *Cornell v. Kirkpatrick*, 665 F.3d 369, 375 n.4 (2d Cir. 2011); *but see Waiters v. Lee*, No. 20-2190, 2021 WL 5183539, at *2 (2d Cir. Nov. 9, 2021) (concluding petitioner's claim "fails for lack of support in clearly established law" because he did not identify "a Supreme Court decision—or a decision of any

other court—finding that the failure to request a lesser-included instruction constitutes deficient performance.").

To establish ineffective representation, a petitioner must show "first, that his attorney's performance fell below an objective standard of reasonableness, and second, that there was prejudice, meaning a reasonable probability that, but for counsel's error, the outcome would have been different." *Lynch*, 789 F.3d at 311; *see also Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). A petitioner can satisfy the first prong by demonstrating that appellate "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Lynch*, 789 F.3d at 311. The issue omitted may be a federal-law or state-law issue. *Lynch*, 789 F.3d at 311; *Cornell*, 665 F.3d at 378-79; *Mosby v. Senkowski*, 470 F.3d 515, 521 (2d Cir. 2006); *but see Simpson v. Bell*, No. 18-CV-1378 (ERK), 2021 WL 3849400, at *6 (E.D.N.Y. Aug. 27, 2021) ("Thus, even if [*Claudio v. Scully*, 982 F.2d 798 (2d Cir. 1992)] and its progeny continue to state the law of this Circuit, they should not be applied after AEDPA because the Supreme Court has not held that counsel can be ineffective for failing to challenge state-law errors.").

To satisfy the second prong, and "establish prejudice in the appellate context, a petitioner must show that, had his claim been raised on appeal, there is a reasonable probability that it would have succeeded before the state's highest court." *Lynch*, 789 F.3d at 313; *see also Aparicio*, 269 F.3d at 95; *Mayo v. Henderson*, 13 F.3d 528, 534-36 (2d Cir. 1994). Courts accordingly evaluate the merit of petitioner's ineffective assistance of appellate counsel claim by evaluating the underlying state-law issue. *See, e.g.*, *Lynch*, 789 F.3d at 306; *Cornell*, 665 F.3d at 378; *Aparicio*, 269 F.3d at 100; *Claudio v. Scully*, 982 F.2d 798, 803-804 (2d Cir. 1992). "[T]he prejudice determination may be made with the benefit of hindsight." *Lynch*, 789 F.3d at 311.

## III.    DISCUSSION

Petitioner raises layered ineffective assistance of counsel claims and direct ineffective assistance of counsel claims.  (Dkt. No. 1.)  Through his layered ineffective assistance of counsel claims, Petitioner asserts appellate counsel was ineffective because he failed to argue that trial counsel was ineffective.  *Id.*  Specifically, Petitioner asserts appellate counsel should have argued trial counsel gave constitutionally deficient representation because he failed to: (1) challenge the procedurally and substantively defective eavesdropping warrant; (2) move to dismiss as facially defective Counts 225, 226, 227, 228, 229, and 244; and (3) move to dismiss Counts 225, 227, and 228 because the prosecution failed to prove the aggregate weight of the drugs.  (Dkt. No. 1 at 5, 18; Dkt. No. 1-1 at 14-18.)  Through his direct ineffective assistance of counsel claims, Petitioner asserts appellate counsel gave constitutionally deficient performance because he failed to: (1) argue the trial court erred in permitting the prosecution to amend Counts 227, 228, and 229 during trial; and (2) argue trial counsel's previous representation of prosecution witness Karshan Mansaray presented an actual conflict of interest.  (Dkt. No. 1 at 18; Dkt. No. 1-1 at 11-16.)  Respondent contends the New York State courts' "rejection of his claims was not contrary to, or based on an unreasonable application of Supreme Court law."  (Dkt. No. 5-1 at 4.)  The Court will address each argument, in turn.

### A.    Layered Ineffective Assistance of Counsel Claims

#### 1.    The Eavesdropping Warrant

Petitioner's first layered ineffective assistance of counsel claim relies on the theory that appellate counsel was ineffective because he failed to argue trial counsel should have challenged the procedural and substantive deficiencies in the eavesdropping warrant.  (Dkt. No. 1-1 at 3-4, 16.)  Petitioner asserts the eavesdropping warrant was defective under New York Criminal

Procedure Law § 700.65 because (1) it had terminated before it was amended, (2) "it exceeded the thirty-day limitation under NY CPL § 700.10(2)," and (3) it relied on an "impermissible transfer of necessity and/or probable cause . . . in violation of NY CPL § 700.20(2)." *Id.* Petitioner claims these errors prejudiced him because, but for these omissions, the prosecution's wiretap evidence would have been suppressed. *Id.* at 17. Respondent contends (1) the warrant never expired, (2) the investigators "never allowed more than 30 days to pass before seeking renewal of the warrant," and (3) "the People's applications seeking to monitor each new target's phones were supported with probable cause and necessity and exhaustion showings." (Dkt. No. 5-1 at 33.) Respondent further argues "appellate counsel could not possibly have prevailed had he presented these claims" because the Appellate Division concluded the trial court "did not err in declining to suppress evidence obtained under the warrants." *Id.* at 33-34.

The Court agrees with Respondent. The necessary factual predicate for each of Petitioner's arguments is unsupported by the record. First, there appears to be no lapse in the warrants between November 19, 2010, and April 30, 2011. (Dkt. No. 6 at 110-241.) The warrants were timely amended and did not expire during this period. *Id.* Petitioner fails to cite any evidence to the contrary. (*See generally* Dkt. Nos. 1-1, 12.)

Second, none of the warrants appear to have exceeded 30 days. (*See* Dkt. No. 6 at 110-241.) Importantly, the warrant that investigators used to track Petitioner's conduct before and on February 27, 2011, took effect on February 11, 2011, and was prohibited from exceeding March 12, 2011. *Id.* at 210-15. The evidence accordingly does not support Petitioner's claim that the warrants exceeded 30 days.

Third, the judge who reviewed and granted the investigators' warrant application specifically concluded there was probable cause to believe Petitioner was about to engage in

drug-related criminal activity.  (Dkt. No. 6 at 210-11.)  Having reviewed the investigators'

lengthy and detailed warrant applications, this Court finds no reason to disagree with that

conclusion.  (*See* Dkt. No. 6 at 143-209.)  In addition to satisfying the probable cause standard,

the applications appear to satisfy all the requirements of NY CPL § 700.20(2), including the

requirement that applicants explain the need for an eavesdropping warrant under NY CPL §

700.20(2)(d).  (*See* Dkt. No. 6 at 155-67, 204-08.)  Petitioner's claim that the warrants lacked

probable cause and failed to comply with requirements of NY CPL § 700.20(2) is without merit.

Petitioner's appellate counsel did not err in failing to raise these issues, which were

unlikely to prevail on appeal.  *See Lynch*, 789 F.3d at 311, 313.  Petitioner has accordingly failed

to demonstrate that the New York State courts' rejection of this layered ineffective assistance of

counsel claim "was contrary to, or involved an unreasonable application of, clearly established

Federal law."  28 U.S.C. § 2254(d)(1).

## 2.    Facial Deficiencies in the Indictment

Petitioner's second layered ineffective assistance of counsel claim relies on the theory

that appellate counsel was ineffective because he failed to argue trial counsel should have moved

to dismiss Counts 225, 226, 227, 228, 229, and 244.  (Dkt. No. 1-1 at 7-8, 14-15.)  Petitioner

asserts these counts were facially defective because they include no allegation "that the offense

took place in the county in which the crime was charged."  *Id.* at 7.  Petitioner notes that he was

charged in Albany County, but Counts 225, 226, 227, 228, and 229 all alleged sale or possession

of drugs in Schenectady County.  *Id.*[6]  According to Petitioner, trial counsel would have

succeeded in moving to dismiss these counts as facially defective under NY CPL § 210.20(h)

---

[6] Petitioner repeats this argument as to Counts 224 and 244, which were dismissed before trial
and on appeal.  (*See* Dkt. No. 6 at 370-72; *Whitehead*, 130 A.D.3d at 1143-44.)  Petitioner's
arguments concerning Counts 224 and 244 are accordingly moot.

because the indictment did not allege Petitioner's conduct had a "particular effect" in Albany County.  *Id.* at 7-8, 14-15.

Respondent concedes the indictment does not explicitly allege Petitioner's actions had a "particular effect" in Albany County, but contends "the indictment nonetheless placed [Petitioner] on notice that the People relied on such a theory."  (Dkt. No. 5-1 at 30.)  Respondent claims "the preamble of the indictment . . . explained that the conspiracy existed to obtain, control, and sell cocaine in, among others, Albany, Orange, and Schenectady counties."  *Id.*  According to Respondent, this "put petitioner on notice that the People were alleging that acts comprising the crimes were committed in multiple counties but led to drug sales in Albany County."  *Id.*  Respondent claims a motion to dismiss would have been rejected on these grounds.  *Id.*

### a)    New York Law

"At common law and under the State Constitution, a defendant has the right to be tried in the county where the crime was committed unless the Legislature has provided otherwise."  *People v. Zimmerman*, 9 N.Y.3d 421, 426-27 (2007); *People v. Greenberg*, 89 N.Y.2d 553, 555-56 (1997).  "The burden is on the People to prove by a preponderance of the evidence that the county where the crime is prosecuted is the proper venue because either the crime was committed there or one of the statutory exceptions is applicable."  *People v. Ribowsky*, 77 N.Y.2d 284, 291-92 (1991).  "The relevant statutory exceptions are set forth in CPL 20.40."  *People v. Guzman*, 153 A.D.3d 1273, 1275 (2d Dept 2017).

Under NY CPL § 20.40(2)(c), a defendant can be convicted in a criminal court of a particular county "[e]ven though none of the conduct constituting the offense may have occurred within such county" as long as "[s]uch conduct had, or was likely to have, a *particular effect*

upon such county . . . and was performed with intent that it would, or with knowledge that it was likely to, have such particular effect therein." NY CPL § 20.40(2)(c) (emphasis added); *see also Steingut v. Gold*, 42 N.Y.2d 311, 317 (1977). "A 'particular effect' within the county is defined as a 'materially harmful impact upon the governmental processes or community welfare of' the county seeking to assert jurisdiction." *Steingut*, 42 N.Y.2d at 317 (quoting NY CPL § 20.10(4)); *see also People v. Roth*, 199 A.D.3d 1380, 1381 (4th Dept 2021). The materially harmful impact must be "concrete and identifiable . . . the impact must be more than minor or incidental, and the conduct must harm the well being of the community as a whole, not merely a particular individual." *Taub v. Altman*, 3 N.Y.3d 30, 33-34 (2004).

According to the Court of Appeals of New York, "particular effect jurisdiction is to be applied only in limited circumstances, [and] it has been rarely invoked." *Id.* at 34. Such limited circumstances include "when, for example, a defendant's out-of-county conduct has interfered with the county's courts or administration of justice; has exposed a large number of county residents to a specific harm; has caused a physical intrusion upon the county; or has involved the theft of funds from the county itself." *Id.* at 36.

Although "an insufficiency in the factual allegations of an indictment is not a jurisdictional defect," defendants can nonetheless challenge geographical jurisdiction before trial or "through direct appeal." *Id.* at 40 n.8; *see also Steingut*, 42 N.Y.2d at 316; *accord* NY CPL § 210.20(1)(h) (permitting dismissal of indictments, "or any count thereof upon the ground that . . . [t]here exists some other jurisdictional *or legal impediment* to conviction of the defendant for the offense charged.") (emphasis added). In *People v. Cespedes*, the New York County Supreme Court rejected the prosecution's claim that New York County had particular effect jurisdiction over defendant because it was "neither proved before the grand jury nor specifically pleaded in

the indictment." *People v. Cespedes*, 9 Misc. 3d 705, 718 (Sup. Ct. 2005).  The trial court

accordingly dismissed the indictment before trial.  *Id.* at 719.  Similarly, the Court of Appeals

concluded particular effect jurisdiction was lacking in *Matter of Taub v. Altman* because the

prosecution failed to demonstrate New York County suffered a concrete and identifiable injury.

*Taub*, 3 N.Y.3d at 34-35; *see also, e.g.*, *Gentner v. Hall*, 193 A.D.3d 1129, 1131 (3d Dept 2021)

(concluding the prosecution "failed to demonstrate that the evidence before the grand jury

established that Warren County has particular effect jurisdiction over the instant crimes").  The

Court dismissed the indictment based on the prosecution's failure to carry its burden of proof

before the grand jury, but rejected "defendants' contention that the indictment was facially

insufficient for failure to specify the particular effect charged."  *Taub*, 3 N.Y.3d at 34-35, 39.

The Court rejected the facial challenge because the prosecution's "bill of particulars, in

combination with the indictment, sufficiently put defendants on notice of the accusations against

them and enabled them to prepare a defense."  *Id.* at 40; *see also, e.g.*, *People v. Raucci*, 109

A.D.3d 109, 114 (3d Dept 2013) (rejecting defendant's contention that the indictment was

facially insufficient where the indictment included the statutory language of CPL § 20.40(2)(c)

and the prosecution's bill of particulars set forth their theory of particular effect jurisdiction in

detail).

<strong>b)    Discussion</strong>

Underneath Petitioner's second layered ineffective assistance of counsel claim is the

argument that the indictment was facially defective because it lacked allegations to substantiate

particular effect jurisdiction in Albany County over Counts 225 through 229.  (Dkt. No. 1-1 at 7,

14-15.)  To carry his burden of demonstrating ineffective assistance of counsel under this theory,

Petitioner must show that, had this argument "been raised on appeal, there is a reasonable

17

probability that it would have succeeded before the state's highest court." *Lynch*, 789 F.3d at 313.  Because Petitioner has failed to demonstrate that there was a reasonable probability the Court of Appeals would dismiss Counts 225 through 229 as facially defective, his second layered ineffective assistance of counsel claim fails.

At the outset, the Court notes—despite Respondent's arguments to the contrary—that the indictment does not have a preamble.  (*See* Dkt. No. 6-2 at 6-8.)  Count 1 has a preamble, but nothing in the indictment suggests the preamble from Count 1 applies to the rest of the indictment.  (Dkt. No. 6-2 at 8.)  Counts 225 through 229 all accuse Petitioner of committing various drug crimes in Schenectady County on February 27, 2011.  (Dkt. No. 6-2 at 104-106.)  None of the language in Counts 225 through 229 explicitly references Count 1, the preamble in Count 1, or Albany County.  *Id.*  Respondent concedes that the indictment "does not explicitly plead the statutory 'particular effect' language."  (Dkt. No. 5-1 at 30.)  Moreover, a searching review of the record reveals no bill of particulars, and Respondent advances no argument that a bill of particulars clarified its unpled theory of particular effect jurisdiction.  *See generally Taub*, 3 N.Y.3d at 39.

These facts should have been obvious to appellate counsel, who should have realized that this was a significant issue.  *See Lynch*, 789 F.3d at 311.  Before trial counsel and appellate counsel confronted these set of facts, the Court of Appeals had twice intimated that a facial challenge to an indictment might succeed.  *See Taub*, 3 N.Y.3d at 39; *Steingut*, 42 N.Y.2d at 317-19.  In *Matter of Steingut v. Gold*, the Court of Appeals concluded particular effect jurisdiction was lacking in Kings County because the prosecution failed to prove its existence before the grand jury, and "the indictment itself does not even allege the effect which the purported crime would have on Kings County."  42 N.Y.2d at 318.  The Court explained that invoking particular

effect jurisdiction "requires the specification of a more concrete and identifiable injury." *Id.* This standard was not met by the conclusory allegation that "the defendants' conduct had and was likely to have a particular effect on Kings County." *Id.*

In *Matter of Taub v. Altman*, the Court discussed this holding in the context of a facial challenge to an indictment "for failure to specify the particular effect charged." 3 N.Y.3d at 39-40. The Court explained that in *Steingut*, it concluded pleading particular effect jurisdiction "requires the specification of a more concrete and identifiable injury." *Id.* Although the indictment in *Taub* lacked such specificity, the Court nonetheless rejected the facial challenge because the bill of particulars adequately set forth "the prosecution's theory of venue and specific facts in support of their contention (which we reject) that there had been a particular effect on New York County." *Id.*

Here, the indictment does not plead particular effect jurisdiction, it lacks any allegation that Petitioner's actions under Counts 225 through 229 caused a concrete and identifiable injury to Albany County, and a searching review of the record reveals no clarification of the prosecution's theory of particular effect jurisdiction in a bill of particulars. Petitioner's appellate counsel could have argued for dismissal of Counts 225 through 229 based on a claim of ineffective assistance of trial counsel. Indeed, the language in *Steingut* and *Taub* would have supported such an argument.

However, fairminded jurists could disagree on whether there is a reasonable probability that this argument would have succeeded before the Court of Appeals. *See Harrington*, 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."); *Lynch*, 789 F.3d at 313 (establishing prejudice requires a petitioner to show that, "had his claim

been raised on appeal, there is a reasonable probability that it would have succeeded before the state's highest court."). Petitioner has failed to cite a single Court of Appeals or Appellate Division case—and the Court is unaware of any—dismissing an indictment on the sole grounds that it did not adequately plead particular effect jurisdiction. When appellate courts in New York dismiss indictments for lack of particular effect jurisdiction, they appear to rely—in one way or another—on the prosecution's failure to prove jurisdiction before the grand jury. *See, e.g.*, *Taub*, 3 N.Y.3d at 34-35; *Steingut*, 42 N.Y.2d at 318; *Gentner*, 193 A.D.3d at 1131. Petitioner's second layered ineffective assistance of counsel claim is not grounded in a challenge to the prosecution's proof before the grand jury—it rests solely on a challenge to pleading defects in the indictment. (*See* Dkt. No. 1-1 at 7, 14-15.)

Moreover, in *People v. Guzman*, the Appellate Division, Second Department concluded the *Steingut* holding "does not stand for any particular pleading requirements to be met by an indictment relying upon CPL 20.40(2)(c) for geographic jurisdiction." 153 A.D.3d at 1275. This calls into doubt Petitioner's theory that a motion to dismiss Counts 225 through 229 for failure to adequately plead particular effect jurisdiction would have been granted. (Dkt. No. 1-1 at 7, 14-15; *but see Cespedes*, 9 Misc. 3d at 718.) Indeed, fairminded jurists could disagree on whether such a motion would have been successful. *See Guzman*, 153 A.D. at 1275; *cf. Steingut*, 42 N.Y at 318 ("In the case before us there was no perceptible material harmful impact such as . . . the sale of illicit drugs in one jurisdiction for the purpose of resale in another").

Petitioner has failed to demonstrate that he was prejudiced by his appellate attorney's failure to challenge the particular effect jurisdiction of Counts 225 through 229. *Lynch*, 789 F.3d at 313. The Court is unconvinced there is a reasonable probability that such an argument would have been successful before the Court of Appeals. *See id.* In the absence of any New York

appellate decision granting relief on the theory that Petitioner advances, fairminded jurists could disagree on whether it was correct for New York's appellate courts to deny Petitioner's claim. *Harrington*, 562 U.S. at 101.  Accordingly, New York State courts' denial of Petitioner's second layered ineffective assistance of counsel claim was not contrary to—and did not involve an unreasonable application of—clearly established federal law.  28 U.S.C. § 2254(d)(1).

### 3.    Aggregate Weight of the Drugs

Petitioner's third layered ineffective assistance of counsel claim relies on the theory that appellate counsel was ineffective in failing to argue trial counsel should have moved to dismiss Counts 225, 227, and 228 because the prosecution failed to prove the aggregate weight of the drugs.  (Dkt. No. 1-1 at 9, 17-18.)  Petitioner argues appellate counsel erred in assuming this argument was preserved.  *Id.* at 18; *see also Whitehead*, 29 N.Y.3d at 958 (concluding the aggregate weight argument was unpreserved).  Petitioner asserts this error was prejudicial because the prosecution failed to produce proof of the aggregate weight of the drugs, which was required for Counts 225, 227, and 228.  (Dkt. No. 1-1 at 18.)

Respondent contends that, based on the evidence presented at trial, "[a]ny rational jury could have found, beyond a reasonable doubt, that petitioner committed the crimes charged." (Dkt. No. 5-1 at 36-37.)  In support of this argument, Respondent summarizes the relevant evidence produced at trial and points to the Third Department's conclusion that Petitioner's convictions on Counts 225, 227, and 228 were "supported by legally sufficient evidence and are not against the weight of the evidence."  *Whitehead*, 130 A.D. 3d at 1144; *see also* Dkt. No. 5-1 at 6-12, 36-38.  According to the Third Department, "legally sufficient evidence was provided by the combination of, among other proof, the extensive phone records, the explanation of the drug-related street language used therein, coinciding transactions (some observed by police), and

testimony of cooperating witnesses who had been participants in various transactions." *Whitehead*, 130 A.D.3d at 1145.

The Court agrees with Respondent. The relevant question here "is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Viewing the evidence in the light most favorable to the prosecution, the Court answers this question in the affirmative.

Under Count 225, Petitioner was charged with possessing four or more ounces[7] of drugs on February 27, 2011. (Dkt. No. 6-2 at 104; *see generally* New York Penal Law § 220.18(1).) Under Count 227, he was charged with selling two or more ounces of drugs. (Dkt. No. 6-2 at 105; *see generally* New York Penal Law § 220.43(1).) Under Count 228, he was charged with attempting to possess eight or more ounces of drugs. (Dkt. No. 6-2 at 105-106; *see generally* New York Penal Law § 220.21(1).) The prosecution put on sufficient evidence for any rational trier of fact to find that Petitioner attempted to possess, actually possessed, and sold these quantities of drugs on February 27, 2011. *See Jackson*, 443 U.S. 307, 319; *see generally Whitehead*, 130 A.D. 3d at 1144-45.

For example, an investigator who reviewed Petitioner's intercepted conversations testified that on February 27, 2011, Petitioner and another individual were making plans to purchase 480 grams of drugs, remix the drugs, and sell them at a weight of 500 grams. (Dkt. No. 6-4 at 396-397, 399-400; Dkt. No. 6-5 at 137.) The investigator further testified that on February 27, 2011, Petitioner told another individual that he had 120 grams of drugs. (Dkt. No. 6 at 296-97; Dkt. No. 6-4 at 9-10; Dkt. No. 6-5 at 72-73.) The investigator also testified that on February

---

[7] "One ounce equals 28.35 grams." *Hylton v. Sessions*, 897 F.3d 57, 62 (2d Cir. 2018).

27, 2011, Petitioner discussed selling seven grams of drugs to a buyer.  (Dkt. No. 6-3 at 540;

Dkt. No. 6-4 at 19.)  The prosecution introduced evidence that the Petitioner and the buyer met

later in the day, and the buyer was subsequently unsatisfied with the quality of the drugs.  (Dkt.

No. 6-3 at 541-42, 550-54; Dkt. No. 6-4 at 451.)  Finally, a key prosecution witness testified that

he purchased 500 grams of drugs from Petitioner on February 27, 2011.  (Dkt. No. 6-5 at 10-11.)

Viewing this evidence in the light most favorable to the prosecution, any rational trier of

fact could have found that on February 27, 2011, Petitioner possessed four or more ounces of

drugs (Count 225), sold two or more ounces of drugs (Count 227), and attempted to possess eight

or more ounces of drugs (Count 228).  *Accord Whitehead*, 130 A.D. 3d at 1144-45.  Petitioner

has accordingly failed to demonstrate that he was prejudiced by appellate counsel's failure to

raise this ineffective assistance of counsel claim on appeal.  *See Lynch*, 789 F.3d at 313.

Consequently, New York State courts' denial of Petitioner's third layered ineffective assistance

of counsel claim was not contrary to—and did not involve an unreasonable application of—

clearly established federal law.  28 U.S.C. § 2254(d)(1).

### B.    Direct Ineffective Assistance of Counsel Claims

#### 1.    Amended Counts

Petitioner's first direct ineffective assistance of counsel claim relies on the theory that

appellate counsel was ineffective for failing to argue the trial court should have denied the

prosecution's mid-trial motion to amend Counts 227, 228, and 229.  (Dkt. No. 1-1 at 8, 15-16.)

Petitioner argues the trial court should have denied the prosecution's motion because amending

the Counts to allege the criminal conduct occurred in Orange County prejudiced Petitioner and

violated NY CPL § 200.70(1).  *Id.*

Respondent contends Petitioner was not prejudiced because (1) "the evidence before the grand jury was consistent with the proposed amendments," (2) "[t]he indictment language placed petitioner on notice of the theory that the conspiracies' activities involved multiple counties," and (3) "the amendment was directed merely to a place and not to a theory." (Dkt. No. 5-1 at 31.) Respondent accordingly asserts "[a]ny appellate challenge to the court's ruling would have failed." *Id.* at 32.

### a)    The Motion to Amend

At trial, an investigator explained that the evidence in support of Counts 225 and 227 involved evidence of Petitioner's alleged possession and sale of drugs in Orange County, New York, not Schenectady County, New York. (Dkt. No. 6-5 at 380-82.) The prosecution objected because it thought it had charged Petitioner with conduct in Orange County, not Schenectady County. (Dkt. No. 6-5 at 383.) Upon learning this mistake, the prosecution moved to amend Counts 227, 228, and 229 of the Indictment "to reflect the county of crime as being Orange County." (Dkt. No. 6-5 at 385-86, 392.) Defense counsel objected, arguing amendment was prohibited under New York Criminal Procedure Law § 200.70(1) because the prosecution was changing its theory. (Dkt. No. 6-5 at 386, 394-95.) The prosecution responded, "in Grand Jury, as well as in trial, the theory remains the same; that Schenectady was involved as through the phone calls, Orange County was involved for the actual exchange of the cocaine, and then Albany was involved as to where the cocaine was ultimately delivered." (Dkt. No. 6-5 at 396-97.) The trial court explained, "I don't find there to be any change of theory, but, rather, a change of location." (Dkt. No. 6-5 at 397.) The trial court allowed the amendment. *Id.*

b)    **New York Law**

Under NY CPL § 200.70(1), an indictment may be amended "before or during trial . . .

upon application of the people and with notice to the defendant and opportunity to be heard."

NY CPL § 200.70(1).  This provision permits trial courts to order a pre- or mid-trial amendment

to the indictment so long as the amendment: (1) relates to "defects, errors or variances from the

proof relating to matters of form, time, place, names of persons and the like;" (2) "does not

change the theory or theories of the prosecution as reflected in the evidence before the grand

jury;" and (3) does not "prejudice the defendant on the merits."  *Id.*; *see also People v. Baber*,

182 A.D.3d 794, 800 (3d Dept 2020), *lv denied*, 35 N.Y.3d 1064 (2020); *Blumen v. McGann*, 18

A.D.3d 870, 871 (2d Dept 2005).

Applying this standard, New York's Appellate Division has allowed amendments to

indictments that correct the location of the charged crime.  *See People v. Hoesen*, 145 A.D.3d

1183, 1184-85 (3d Dept 2016); *People v. Cruz*, 61 A.D.3d 1111, 1112 (3d Dept 2009); *People v.

Ward*, 27 A.D.3d 776, 778 (3d Dept 2006); *People v. Smith*, 221 A.D.2d 485, 488 (2d Dept

1995).  For example, in *People v. Hoesen*, the Third Department approved of a pre-trial

amendment that changed the location of the charged crime, criminal sale of a controlled

substance in the third degree.  145 A.D.3d at 1184-85.  The Court explained the "change in

location did not alter the People's theory of the case nor did defendant suffer any prejudice by

it."  *Id.* at 1185.  Similarly, in *People v. Cruz*, the Third Department approved an amendment that

changed the location of the charged crime, criminal sale of a controlled substance in the third

degree.  61 A.D.3d at 1111-12.  The Court explained the "slight change of location for a drug

sale in the street did not change the prosecution's theory and did not prejudice defendant."  *Id.* at

1112.  The same reasoning applied in *People v. Ward* and *People v. Smith*, where the prosecution

amended the indictments to reflect the correct locations of the charged crimes. *Ward*, 27 A.D.3d at 778; *Smith*, 221 A.D.2d at 488; *see also, e.g.*, *People v. Clapper*, 123 A.D.2d 484, 485 (3d Dept 1986) (concluding "the change of location in the crime was insignificant" and defendant "was not prejudiced by the amendment").

c)    **Discussion**

This Court is unconvinced that appellate counsel erred in failing to challenge the trial court's ruling on appeal. Petitioner's claim is unsupported by the text of NY CPL § 200.70(1), and the case law applying it. The text of NY CPL § 200.70(1) permits a court to grant the prosecution's motion to "amend the indictment as to matters such as the place of the crime as long as the amendment does not change the prosecution's theory or prejudice the defendant." *Cruz*, 61 A.D.3d at 1112. Petitioner has failed to demonstrate how amending the location of Counts 225, 228, and 229 changed the prosecution's theory or otherwise prejudiced him. *See* NY CPL § 200.70(1); *accord Hoesen*, 145 A.D.3d at 1184-85; *Cruz*, 61 A.D.3d at 1112. The prosecution does not need to prove the county of commission to prove the substantive elements of Counts 225, 228, and 229. *See* New York Penal Law § 220.43(1) (Count 227);[8] *id.* at § 220.21(1) (Count 228);[9] *id.* at § 220.16(1) (Count 229).[10] Furthermore, when confronted with

---

[8] "A person is guilty of criminal sale of a controlled substance in the first degree when he knowingly and unlawfully sells: 1. one or more preparations, compounds, mixtures or substances containing a narcotic drug and the preparations, compounds, mixtures or substances are of an aggregate weigh of two ounces or more." New York Penal Law § 220.43(1).

[9] "A person is guilty of criminal possession of a controlled substance in the first degree when he or she knowingly and unlawfully possesses: 1. one or more preparations, compounds, mixtures, or substances containing a narcotic drug and said preparations, compounds, mixtures or substances are of an aggregate weight of eight ounces or more." New York Penal Law § 220.21(1).

[10] "A person is guilty of criminal possession of a controlled substance in the third degree when he knowingly and unlawfully possesses: 1. a narcotic drug with intent to sell it." New York Penal Law § 220.16(1).

26

amendments that correct the location of drug crimes, like the amendments at issue here, New York's Appellate Division consistently permits the amendments on the grounds that they do not change the prosecution's theory or prejudice defendant.  *See, e.g.*, *Hoesen*, 145 A.D.3d at 1184-85; *Cruz*, 61 A.D.3d at 1112; *Ward*, 27 A.D.3d at 778.  Petitioner has accordingly failed to demonstrate that this is a significant and obvious claim that satisfies the first prong of the *Strickland* standard.  *See Lynch*, 789 F.3d at 311.

Petitioner has also failed to demonstrate that this claim satisfies the second prong of the *Strickland* standard, prejudice.  *Id.* at 313.  Given the text of NY CPL § 200.70(1) and New York case law applying it to circumstances analogous to the case at bar, Petitioner cannot show that there is a reasonable possibility this claim would have succeeded before the Court of Appeals of New York.  *See id.*  Consequently, New York State courts' denial of Petitioner's first direct ineffective assistance of counsel claim was not contrary to—and did not involve an unreasonable application of—clearly established federal law.  28 U.S.C. § 2254(d)(1).

### 2.    Conflict of Interest

Petitioner's second direct ineffective assistance of counsel claim relies on the theory that appellate counsel was ineffective for failing to argue trial counsel had an actual conflict of interest that adversely affected his performance.  (Dkt. No. 1-1 at 5-7, 11-14.)  Petitioner claims the conflict stemmed from trial counsel's prior representation of a key prosecution witness.  *Id.* at 5-7, 12-14.  Petitioner asserts this conflict caused a deficient cross-examination of the key prosecution witness.  *Id.*  According to Petitioner, the conflict caused trial counsel to pass on two opportunities to impeach the prosecution witness.  *Id.*

Respondent contends "any purported conflict did not operate on the defense."  (Dkt. No. 5-1 at 23-27.)  Respondent points to defense counsel's "rigorous 65-page cross-examination of"

the prosecution witness, arguing defense counsel highlighted inconsistencies in his testimony and "capably conveyed to the jury" that the witness was "a long-term, high-level drug dealer, [who] would testify to anything to avoid a 25-year prison sentence." *Id.* at 24.

a)    <strong>Legal Standard</strong>

"A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." *LoCascio v. United States*, 395 F.3d 51, 56 (2d Cir. 2005); *United States v. Schwarz*, 283 F.3d 76, 90 (2d Cir. 2002). "Conflicts of interest fall into three categories: (1) *per se* conflicts; (2) actual conflicts; and (3) potential conflicts." *Martinez v. Kirkpatrick*, 486 F. App'x 158, 160 (2d Cir. 2012). "Although a defendant is generally required to show prejudice to prevail on an ineffective assistance of counsel claim, this is not so when counsel is burdened by an actual conflict of interest." *LoCascio*, 395 F.3d at 56 (quoting *Schwarz*, 283 F.3d 76). "In order for a defendant to prevail on a claim that he was denied effective assistance of counsel based on counsel's actual conflict, the defendant must still establish that (a) counsel actively represented conflicting interests, and (b) such conflict adversely affected his lawyer's performance." *United States v. Feyrer*, 333 F.3d 110, 116 (2d Cir. 2003); *see also Tueros v. Greiner*, 343 F.3d 587, 591-92 (2d Cir. 2003) (Sotomayor, Circuit Judge).

"An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Schwarz*, 283 F.3d at 91. An actual conflict of interest is more than "a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). "In *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980), the Court recognized multiple concurrent representations to give rise to an actual conflict," *Hyman v. Brown*, 927 F.3d

639, 670 n.30 (2d Cir. 2019), and articulated the above-outlined legal standard for conflict of

interest claims stemming from concurrent representation. *See Tueros*, 343 F.3d at 591-94

(discussing the holding and application of *Sullivan*). But in *Mickens*, the Court cautioned that it

had not ruled "upon the need for the *Sullivan* prophylaxis in cases of successive representation."

*Mickens*, 535 U.S. 162, 176. "Whether *Sullivan* should be extended to such cases remains . . . an

open question." *Id.*; *see generally Hyman*, 927 F.3d at 670 n.30 (explaining "it is not clearly

established by Supreme Court precedent that a fee dispute between a defense attorney and a

potential witness gives rise to an actual conflict of interest"); *Torres v. Donnelly*, 554 F.3d 322,

325-26 (2d Cir. 2009) (concluding *Sullivan* did not apply to "defense counsel's ethical obligation

to correct the testimony he knew to be inaccurate"); *Tueros*, 343 F.3d at 597 ("Reserving

*Sullivan*'s limited presumption of prejudice to remedy the structural flaw that occurs when a

lawyer is placed in the untenable situation of being required to serve two masters is a reasonable

line to draw"); *Bethea v. Walsh*, No. 09-CV-5037 (NGG), 2016 WL 258639, at *28 (E.D.N.Y.

Jan. 19, 2016) (explaining "application of the *Sullivan* presumption to conflict-of-interest cases

other than those involving multiple concurrent representation, is not clearly established federal

law"); *Eber-Schmid v. Cuomo*, No. 09-CIV-8036 (BSJ) (AJP), 2010 WL 1640905, at *19 n.36

(S.D.N.Y. Apr. 22, 2010), *report and recommendation adopted*, 2012 WL 3105012 (S.D.N.Y.

July 31, 2012) ("To date, the Supreme Court only has applied this presumption of prejudice to

cases involving attorneys who concurrently represented clients with conflicting interests—so-

called 'multiple concurrent representation.'"); *Wright v. Smith*, No. 9:03-CV-806, 2007 WL

2412248, at *7 n.13 (N.D.N.Y. Aug. 21, 2007), *aff'd*, 348 F. App'x 612 (2d Cir. 2009) ("Based

on *Mickens,* it is possible that an actual conflict arises only in cases of concurrent representation

of clients with conflicting interests, or in cases of successive representation on related matters. However, this issue remains unresolved.").

To demonstrate that an actual conflict adversely affected trial counsel's performance, a petitioner "must establish an actual lapse in representation that resulted from the conflict." *LoCascio*, 395 F.3d at 56. "This is a two-part showing." *Id.*; *see also Feyrer*, 333 F.3d 110, 116. First, a petitioner "must demonstrate the existence of some plausible alternative defense strategy not taken up by counsel." *LoCascio*, 395 F.3d at 56; *see also Feyrer*, 333 F.3d at 116. This step does not require a petitioner "to show that the alternative defense would necessarily have been successful." *LoCascio*, 395 F.3d at 56. Second, a petitioner "must show causation—i.e., that the alternative defense was inherently in conflict with or not undertaken emphasized the attorney's other loyalties or interests." *Id.*; *see also Feyrer*, 333 F.3d at 116. "In other words, [the petitioner] must show that trial counsel chose not to undertake the alternative strategy because of [the] conflict." *LoCascio*, 395 F.3d at 57.

b)      **Discussion**[11]

Petitioner's second direct ineffective assistance of counsel claim fails because he cannot demonstrate that trial counsel had an actual conflict of interest, nor can he demonstrate a lapse in trial counsel's performance. *LoCascio*, 395 F.3d at 56. First, Petitioner has failed to demonstrate that trial counsel had an actual conflict of interest that caused trial counsel's interests to diverge from Petitioner's. *See Schwarz*, 283 F.3d at 91. Petitioner appears to claim that trial counsel's prior representation of the prosecution witness caused a conflict between trial

---

[11] The Court does not address whether Petitioner's trial counsel operated under a *per se* or potential conflict because Petitioner raises neither argument. *See, e.g.*, *Medrano v. United States*, No. 06-CR-0061 (LTS), 2015 WL 4522857, at *3 n.4 (S.D.N.Y. July 27, 2015), *aff'd*, 691 F. App'x 663 (2d Cir. 2017).

counsel's obligations to Petitioner and the prosecution witness.  (*See* Dkt. No. 1-1 at 12-14.)

Yet, Petitioner fails to identify trial counsel's divergent obligations and any relevant conflicting

interests.  *See id.*  Instead, Petitioner simply argues that an actual conflict existed because trial

counsel once represented the prosecution witness in an unrelated matter and was tasked with

cross-examining the prosecution witness in Petitioner's case.  *See id.*  The Court is unconvinced

these facts, without more, give rise to an actual conflict.

Moreover, the Supreme Court has not officially applied the *Sullivan* rule—created in the

context of concurrent conflicts—to alleged conflicts like Petitioner's, which arise out of

successive representation.  *Mickens*, 535 U.S. 162, 176; *see also Tueros*, 343 F.3d at 593.  Stated

differently, the Court has not ruled "upon the need for the *Sullivan* prophylaxis in cases of

successive representation."  *Mickens*, 535 U.S. 162, 176.  The application of the *Sullivan* rule to

successive representation conflict of interest claims is accordingly "an open question."  *Id.*

Petitioner has failed to explain how appellate counsel erred in failing to advance a theory that is

unresolved.  Stated differently, Petitioner has failed to demonstrate that this theory was so

"significant and obvious" that by omitting it, appellate counsel's "performance fell below an

objective standard of reasonableness."  *See Lynch*, 789 F.3d at 311.

Second, Petitioner has failed to demonstrate how trial counsel's alleged errors while

cross-examining the prosecution witness were caused by counsel's ongoing professional

obligations to the witness.  *LoCascio*, 395 F.3d at 56-57.  Petitioner does not claim trial counsel's

cross-examination was impaired because counsel's prior representation was substantially related

to Petitioner's case.  *See generally Quinones v. Miller*, No. 01-CIV-10752 (WHP), 2005 WL

730171, at *6 (S.D.N.Y. Mar. 31, 2005), *aff'd,* 224 F. App'x 44 (2d Cir. 2007) (explaining

"several courts have held that a petitioner is relieved of his burden to show prejudice where (1)

counsel's prior representation was substantially related to his representation of the petitioner, or (2) counsel learned confidential information from the prior representation that was relevant to the petitioner's case").  Nor does Petitioner claim trial counsel's cross-examination was deficient because he failed to utilize confidential information from the prior representation that was relevant in Petitioner's case.  *See id.*  Rather, Petitioner argues trial counsel should have impeached the prosecution witness with information that was publicly available and with questions directed at inconsistencies in the witness's testimony.  (Dkt. No. 1-1 at 13-14.)  This alternative strategy—impeaching the witness with information that was publicly available and inconsistencies in the witness's testimony—bears no obvious relation to trial counsel's previous representation of the prosecution witness, and Petitioner makes no argument that they do.  *See id.*  Petitioner has accordingly failed to demonstrate that the alleged shortcomings in trial counsel's cross-examination were caused by counsel's previous representation of the prosecution witness.  *See LoCascio*, 395 F.3d at 56-57.

Furthermore, according to Petitioner, trial counsel's representation of the prosecution witness was from "2007 or 2008" and resulted in "an ACD or a dismissal."  (Dkt. No. 1-1 at 5.)  Given this, "Petitioner's preferred defense strategy could not possibly have been materially adverse to the interests of [the prosecution witness], as the strategy could have no practical adverse effect on [the witness]."  *Medrano v. United States*, No. 06-CR-0061 (LTS), 2015 WL 4522857, at *5 (S.D.N.Y. July 27, 2015), *aff'd*, 691 F. App'x 663 (2d Cir. 2017).

Petitioner has accordingly failed to demonstrate appellate counsel was ineffective for failing to argue trial counsel had an actual conflict of interest that adversely affected his performance.  *See Lynch*, 789 F.3d at 311, 313.  New York State courts' denial of Petitioner's

second direct ineffective assistance of counsel claim was not contrary to—and did not involve an unreasonable application of—clearly established federal law.  28 U.S.C. § 2254(d)(1).

## III.    CERTIFICATE OF APPEALABILITY

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."  28 U.S.C. § 2253(c)(1); *see also* Fed. R. App. P. 22(b)(1).  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Hohn v. United States*, 524 U.S. 236, 240 (1998).  Because Petitioner has not satisfied this standard, the undersigned recommends declining to issue a Certificate of Appealability in this matter.

## IV.    CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein the Court hereby

**RECOMMENDS** that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED and DISMISSED**; and the Court further

**RECOMMENDS** that no Certificate of Appealability shall be issued with respect to any of Petitioner's claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1)

(Supp. 2013); Fed. R. Civ. P. 72, 6(a).

      **IT IS SO ORDERED**.


Dated: February 8, 2022
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge