UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NORMAN WHITEHEAD,

                          Petitioner,

        -against-                                9:18-CV-1436 (LEK/TWD)

JAMIE LAMANNA,

                  Respondent.

_____

**AMENDED MEMORANDUM-DECISION AND ORDER**

I.      **INTRODUCTION**

        Petitioner Norman Whitehead seeks federal habeas relief pursuant to 28 U.S.C. § 2254.

Dkt. No. 1 ("Petition"); Dkt. No. 1-1 ("Petition Memorandum"). Petitioner challenges his New

York State convictions. He argues that he was denied effective assistance of appellate counsel

during state court proceedings in violation of the Sixth Amendment. See generally Pet. Mem.

        On March 12, 2019, Respondent Jamie LaManna filed a response to the Petition. Dkt.

No. 5 ("Response"). After this Court granted Petitioner's request for more time to reply to

Respondent, Dkt. No. 11, Petitioner submitted his reply on May 2, 2019, Dkt. No. 12 ("Reply").

        Now before the Court is a Report-Recommendation issued by the Honorable Thérèse

Wiley Dancks, United States Magistrate Judge, recommending that the Petition be denied and

dismissed, and no certificate of appealability be issued. Dkt. No. 13 ("Report-

Recommendation"). Petitioner filed objections to the Report-Recommendation. Dkt. No. 20

("Objections").[1] Respondent has filed a response to the objections. Dkt. No. 23 ("Response to

_____

[1] On February 11, 2022, Petitioner requested a 30-day extension to file objections to the Report-
Recommendation, Dkt. No. 15, which the Court granted on February 14, 2022. Dkt. No. 16.

Objections").

For the reasons that follow, the Court approves the Report-Recommendation in part and rejects the Report-Recommendation in part. The Court rejects the Report-Recommendation to the extent it recommends denying habeas relief for the following claim advanced by Petitioner: Petitioner's appellate counsel was constitutionally ineffective for failing to argue that Petitioner's trial counsel was constitutionally ineffective for not moving to dismiss the five facially defective counts (225, 226, 227, 228, and 229) in the indictment. Therefore, the Court grants habeas relief with respect to that Sixth Amendment claim. Accordingly, Petitioner's convictions stemming from those five counts are vacated and this action is remanded to the Albany County Court for proceedings consistent with this Memorandum-Decision and Order. The Report-Recommendation is otherwise approved and adopted.

## II.    BACKGROUND

### A.  Factual Background

The factual circumstances relevant to Petitioner's convictions for the possession, purchase, and sale of controlled substances, as well as for conspiracy, were detailed in the Report-Recommendation, familiarity with which is assumed. R. & R. at 2–3. Likewise, the factual allegations underlying Petitioner's request for habeas relief were detailed in the Report-Recommendation. See id.

### B.  Procedural History

Petitioner was one of more than 26 individuals named in a 278-count indictment concerning various drug-related crimes. Dkt. No. 6-2 at 6–125. Petitioner was initially charged with eleven of the counts. See id. These counts included (1) conspiracy in the second degree (Count 1); (2) criminal possession of a controlled substance in the second degree (Count 225);

(3) criminal possession of a controlled substance in the third degree (Counts 226 and 229); (4) criminal sale of a controlled substance in the first degree (Count 227); (5) criminal possession of a controlled substance in the first degree (Count 228); (6) criminal sale of a controlled substance in the third degree (Counts 224, 232, 244, and 245); and (7) attempted criminal possession of a controlled substance in the third degree (Count 242). See id. Before trial, however, the prosecution dismissed Counts 224 and 242, leaving just nine counts remaining. Dkt. No. 6 at 370–72.

Following an Albany County Court jury trial on July 30, 2012, Petitioner was convicted of all nine counts and sentenced to an aggregate term of 29 years in prison. Dkt. No. 6-6 at 22–23; Dkt. No. 7-10 at 8–10. Thereafter, Petitioner appealed to the Third Department and submitted his papers on November 20, 2014. Dkt. No. 6 at 11–69. Petitioner's appellate counsel raised several arguments that sought to overturn Petitioner's convictions. See id. However, the Third Department rejected every argument, except for Petitioner's arguments related to Counts 244 and 245. See People v. Whitehead, 130 A.D.3d 1142, 1143 (N.Y. App. Div. 2015). The Third Department found that Petitioner's "convictions on counts 244 and 245 [we]re not supported by the weight of the evidence," and reversed Petitioner's convictions on those counts. After the Third Department's decision, only seven counts remained from the eleven counts Petitioner initially faced.

Petitioner subsequently sought review before the New York State Court of Appeals, which was granted. Dkt. No. 6-3 at 97. Petitioner argued that the remaining seven counts were unsupported by legally sufficient evidence, but the Court of Appeals disagreed. See People v. Whitehead, 29 N.Y.3d 956, 958 (N.Y. 2017). In a two-page order on March 28, 2017, the Court

of Appeals rejected Petitioner's arguments concerning the sufficiency of the evidence, in addition to Petitioner's "remaining claims." Id.

On May 24, 2018, Petitioner filed a writ of error coram nobis before the Third Department. Dkt. No. 6-5 at 235–68. Petitioner argued that his right to effective assistance of counsel was violated by his appellate counsel's failure to raise the following issues on appeal: (1) trial counsel's previous representation of a key prosecution witness which purportedly presented a conflict of interest; (2) the trial court's error in permitting the prosecution to amend Counts 227, 228, and 229 during trial; (3) the indictment being impermissibly amended under New York Law; and (4) trial counsel's ineffectiveness in failing to: (a) move to dismiss as facially defective Counts 225, 226, 227, 228, 229, and 244 of the indictment because the counts did not allege Petitioner's conduct had a particular effect in Albany County; (b) argue that the eavesdropping warrants were procedurally and substantively defective; and (c) move to dismiss Counts 225, 227, and 228 because the prosecution had failed to prove the aggregate weight of the illegal drugs. Dkt. No. 6-5 at 240–49, 472–90.

On September 7, 2018, the Third Department summarily denied the petition. Dkt. No. 6-6 at 24. And on November 15, 2018, the Court of Appeals denied Petitioner's request for leave to appeal. Dkt. No. 6-5 at 30.

Petitioner commenced suit in this Court on December 12, 2018, raising arguments concerning his alleged deprivation of effective assistance of appellate counsel. Dkt. No. 1. On February 8, 2022, the Magistrate Judge issued a Report-Recommendation, recommending that the Petition should be denied and no certificate of appealability be issued. See generally R. & R.

**C.  The Report-Recommendation**

4

As discussed, the Magistrate Judge reviewed the Petition and the Response and recommended that the Petition should be denied and that no Certificate of Appealability be issued. See generally id.

First, the Magistrate Judge addressed Petitioner's claim regarding the eavesdropping warrant that enabled Petitioner's indictment. Id. at 12. Petitioner asserted that his appellate counsel was ineffective for failing to argue that Petitioner's trial counsel should have challenged the warrant's alleged deficiencies. Id. Specifically, Petitioner contended that the warrant was in violation of New York Criminal Procedure Law ("NYCPL") § 700.65 because it (1) had terminated before it was amended, (2) exceeded the thirty-day duration permitted for warrants, and (3) relied on an "impermissible transfer of necessity and or probable cause." Id. at 12–13. However, the Magistrate Judge rejected each argument because the "necessary factual predicate for each of Petitioner's arguments [was] unsupported by the record." Id. at 13.

Second, the Magistrate Judge analyzed Petitioner's argument regarding the facial deficiencies in the indictment. Id. at 14. Petitioner argued that his appellate counsel was ineffective because appellate counsel failed to argue that trial counsel should have moved to dismiss six defective counts in the indictment. Id. Petitioner specifically posited that these counts were facially defective because they did not allege that Petitioner's offense took place in the county in which the crimes were charged. Id. The Magistrate Judge began by noting that despite Respondent's argument to the contrary, the indictment did not contain a preamble establishing the indictment's jurisdiction for the challenged counts. Id. at 18. The Magistrate Judge further found that Respondent's alleged theory of jurisdiction—the narrow and rarely used "particular effect jurisdiction"—was not properly pleaded *anywhere* in the indictment. Id. She thus concluded that the "indictment does not plead effect jurisdiction . . . under Counts 225 through

229." Id. The Magistrate Judge thus agreed with Petitioner that "[t]hese facts should have been obvious to appellate counsel, who should have realized that this was a significant issue." Id. (citation omitted). However, despite finding that the indictment failed to plead jurisdiction, she ultimately rejected Petitioner's arguments. The Magistrate Judge stated that although "the language" from Court of Appeals cases supports Petitioner's argument, "fairminded jurists could disagree on whether there is a reasonable probability that this argument would have succeeded before the Court of Appeals." Id. at 19 (citation omitted). The Magistrate Judge thus found: "In the absence of any New York appellate decision granting relief on the theory that Petitioner advances, fairminded jurists could disagree on whether it was correct for New York's appellate courts to deny Petitioner's claim." Id. at 20–21.

Third, the Magistrate Judge turned to Petitioner's argument that "appellate counsel was ineffective in failing to argue trial counsel should have moved to dismiss Counts 225, 227, and 228 because the prosecution failed to prove the aggregate weight of the drugs." Id. at 21 (citing Pet. Mem. at 9, 17–18). The Magistrate Judge rejected this argument because, when "[v]iewing this evidence in the light most favorable to the prosecution, any rational trier of fact could have found that" Petitioner committed the crimes for which he was convicted. Id. at 23.

Fourth, the Magistrate Judge analyzed Petitioner's argument that "appellate counsel was ineffective for failing to argue the trial court should have denied the prosecution's mid-trial motion to amend Counts 227, 228, and 229." Id. The Magistrate Judge was unpersuaded by this argument because she found that "Petitioner's claim is unsupported by the text" of the New York criminal statute at issue, which requires a showing of prejudice that Petitioner could not satisfy. Id. at 26. She also found that this argument was not so "significant and obvious" that appellate counsel should have been on notice of it. Id. at 27.

Fifth, the Magistrate Judge found Petitioner's next argument—"that appellate counsel was ineffective for failing to argue trial counsel had an actual conflict of interest that adversely affected his performance"—unavailing. Id. Petitioner contended that this was a Sixth Amendment violation because the alleged conflict from trial counsel's prior representation of a key prosecution witness should have been obvious to appellate counsel. However, the Magistrate Judge did not identify a conflict. She instead concluded that: "Petitioner fails to identify trial counsel's divergent obligations and relevant conflicting interests." Id. at 31. She also stated that "Petitioner has failed to demonstrate how trial counsel's alleged errors while cross-examining the prosecution witness were caused by counsel's ongoing professional obligations to the witness." Id. Accordingly, she rejected this argument and recommended that this Court deny the Petition and decline to issue a Certificate of Appealability. Id. at 32–33.

## III.    LEGAL STANDARD

"Rule 72 of the Federal Rules of Civil Procedure and Title 28 United States Code Section 636 govern the review of decisions rendered by Magistrate Judges." A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 191 F. Supp. 2d 404, 405 (S.D.N.Y. 2002); see also 28 U.S.C. § 636; Fed. R. Civ. P. 72. Review of decisions rendered by Magistrate Judges are also governed by the Local Rules. See L.R. 72.1. As 28 U.S.C. § 636 states:

> Within fourteen days after being served with a copy [of the magistrate judge's report and recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of the court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate [judge]. The judge may also receive further evidence or recommit the matter to the magistrate [judge] with instructions.

28 U.S.C. § 636(b)(1). When written objections are filed and the district court conducts a de novo review, that "*de novo* determination does not require the Court to conduct a new hearing; rather, it mandates that the Court give fresh consideration to those issues to which specific objections have been made." A.V. by Versace, 191 F. Supp. 2d at 406 (emphasis in original); see also 12 Wright & Miller, Fed. Prac. & Proc. Civ. § 3070.2 (3rd ed.) (2022) ("[T]he judge to whom the objection is made must review the record and magistrate's recommendations, and must make a de novo determination of the facts and legal conclusions, receiving additional evidence and rehearing witnesses at his or her discretion. The district judge must not be a rubber stamp." (footnote omitted)).

"The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record." DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009). "When a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the [report and recommendation] strictly for clear error." New York City Dist. Couns. of Carpenters Pension Fund v. Forde, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (quoting Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)).

Moreover, an application for a writ of habeas corpus may not be granted until a state inmate "has exhausted the remedies available in the courts of the State" unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(i), (ii).

To satisfy the exhaustion requirement under § 2254, a state inmate must "rais[e] his federal claim before the state courts in accordance with state procedures." Shinn v. Ramirez, 142 S. Ct. 1718, 1732 (2022) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).

Additionally, a state inmate must also "'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted). In other words, a state inmate "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845.

"Where as here, the state court does not provide reasons for its dismissal of a petitioner's claim, [courts] consider 'what arguments or theories . . . could have supported[] the state court's decision,'" and a federal court "may grant habeas [relief] only if 'fairminded jurists could [not] disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.'" Lynch v. Dolce, 789 F.3d 303, 311 (2d Cir. 2015) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)).

The Supreme Court has long recognized that that the Sixth Amendment guarantees "the right to effective assistance of counsel on [direct] appeal." Evitts v. Lucey, 469 U.S. 387, 396–97 (1985). "In assessing a claim that a lawyer's representation did not meet the constitutional minimum, [courts] 'indulge a strong presumption that counsel's conduct f[ell] within the wide range of professional assistance.'" Lynch, 789 F.3d at 311 (quoting Strickland v. Washington, 466 U.S. 668, 689 (1984)). To defeat this presumption, a petitioner "must establish both parts of the familiar Strickland test, showing first, that his attorney's performance 'fell below an objective standard of reasonableness,' and, second, that there was prejudice, meaning a 'reasonable probability' that but for counsel's error, the outcome would have been different." Id. (quoting Strickland, 466 U.S. at 694) (internal citations omitted). The Supreme Court has instructed that this standard applies in both the appellate and trial context. See Smith v. Robbins,

9

528 U.S. 259, 285 (2000) ("[T]he proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in <u>Strickland</u>[.]").

Therefore, "a petitioner may establish constitutionally inadequate performance of [appellate counsel] if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>Lynch</u>, 789 F.3d at 311 (alteration in original) (quoting <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994)). The issue omitted may be based in either federal or state law. <u>See id.</u> (citing <u>Mayo</u>, 13 F.3d at 533). And "[t]o establish prejudice in the appellate context, a petitioner must show that, had his claim been raised on appeal, there is a reasonable probability that it would have succeeded before the state's highest court." <u>Lynch</u>, 789 F.3d at 311 (citing <u>Claudio v. Scully</u>, 982 F.2d 798, 805 (2d Cir. 1992)). "Whereas counsel's performance is evaluated based 'on the facts of the particular case, viewed as of the time of counsel's conduct,'" <u>id.</u> (citing <u>Strickland</u>, 466 U.S. at 690), "the prejudice determination 'may be made with the benefit of hindsight.'" <u>Id.</u> (quoting <u>Mayo</u>, 13 F.3d at 534).

## IV. DISCUSSION

Petitioner objected to every single one of the Magistrate Judge's conclusions. <u>See generally</u> Objs. Because Petitioner lodged specific objections to many of the Magistrate Judge's findings, the Court will conduct a de novo review of the Report-Recommendation unless otherwise noted. The Court thus must determine whether it should accept, reject, or modify the Magistrate Judge's recommendation to (1) deny and dismiss the Petition and (2) decline to grant a Certificate of Appealability.

### A. Appellate Counsel's Alleged Failure to Argue That Trial Counsel Failed to Preserve a Meritorious Challenge to the Eavesdropping Warrant

Petitioner objected to the portion of the Report-Recommendation that rejected his argument about the eavesdropping warrant used to surveil him. In particular, Petitioner asserted

that appellate counsel was ineffective for failing to argue that trial counsel should have challenged the deficiencies in the eavesdropping warrant. Objs. at 1. Petitioner states that "the Magistrate Judge did not directly rule on Petitioner's claim that NY CPL 700.65 does not permit a court to issue an 'amended' eavesdropping warrant to add a new target. Petitioner argued that the New York statute does not allow for the amendment of an eavesdropping warrant to add new targets and that a new warrant must be obtained to eavesdrop on new subjects." Id. Likewise: "Petitioner [also] objects to the R&R's findings and conclusions concerning his claims that the February 11, 2011 warrant and prior warrants impermissibly transferred necessity and probable cause between multiple orders combined in one application in violation of NY CPL 700.20." Id. at 5. Thus, this objection focuses on (1) the Magistrate Judge's alleged failure to address Petitioner's argument that New York State investigators did not comply with state law in obtaining the warrant at issue; and (2) the R. & R.'s analysis of whether probable cause and necessity were transferred in a way that complied with NY CPL 700.20.

The Magistrate Judge found that appellate counsel was not ineffective for declining to raise arguments concerning trial counsel's failure to challenge the alleged deficiencies because: "The necessary factual predicate for each of Petitioner's arguments is unsupported by the record. First, there appears to be no lapse in the warrants between November 19, 2010, and April 30, 2011. The warrants were timely amended and did not expire during this period." R. & R. at 13 (internal citations omitted). The Magistrate Judge also found that, "none of the warrants appear to have exceeded 30 days. Importantly, the warrant that investigators used to track Petitioner's conduct before and on February 27, 2011, took effect on February 11, 2011 and was prohibited from exceeding March 12, 2011. The evidence accordingly does not support Petitioner's claim that the warrants exceeded 30 days." Id. (citations omitted). Finally, the Magistrate Judge found

no reason to disagree with the "judge who reviewed and granted the investigators' warrant application [who] specifically concluded there was probable cause to believe Petitioner was about to engage in drug-related criminal activity." Id. at 13–14. Thus, according to the Magistrate Judge: "Petitioner's appellate counsel did not err in failing to raise these issues, which were unlikely to prevail on appeal." Id. at 14 (citation omitted).

The Court agrees with the Magistrate Judge. Petitioner first takes issue with the Magistrate Judge's finding that there was "no lapse in the warrants between November 19, 2010, and April 30, 2011." R. & R. at 13. Petitioner contends that contrary to the Magistrate Judge's conclusion, "the original warrant, issued on November 19, 2010 [to surveil alleged co-conspirator] Roehr[], had expired when the February 11, 2011 'amendment' was issued authorizing the surveillance of Whitehead and his phone." Objs. at 3. Petitioner finds support for his theory of the expiration date in NY CPL 700.65(4). That statute states:

> When a law enforcement officer, while engaged in intercepting communications . . . in the manner authorized by this article, intercepts a communication or makes an observation which was not otherwise sought and which constitutes evidence of any crime . . . the contents of such communications or observation, and evidence derived therefrom, may be disclosed . . . and any evidence derived therefrom may be used . . . when a justice amends the eavesdropping or video surveillance warrant to include such contents.

NY CPL 700.65(4). From this language Petitioner gleans that the statute, "allow[s] for the surveillance of electronic communications for a new crime that was discovered under the initial warrant, not for the investigation of new targets and new phones. In this case, the February 2011 warrant added Norman Whitehead and his phone as targets—an 'amendment' that was not authorized by law." Objs. at 2. And furthermore, Petitioner states that the New York Practice Commentaries supports this interpretation of NY CPL 700.65(4). The relevant language from the Commentaries includes:

12

> [T]here is a distinction between amending the warrant to include discovery of a new crime and expanding the warrant for further electronic surveillance. The purpose of the amendment pursuant to [CPL § 700.65 (4)] is to serve as assurance that the information was obtained through a valid order and in good faith, but if an extension of electronic surveillance is based upon the inadvertent discovery, a new warrant must be obtained, which involves compliance with all the criteria for the original warrant

Peter Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL § 700.65.

Although Petitioner's argument concerning Section 700.65 proscribing the use of a warrant in this manner may be plausible, the Court is unpersuaded that this argument "raise[d] a significant obvious issue" that appellate counsel should have raised. Lynch, 789 F.3d at 312. While it is certainly possible that this argument could theoretically succeed, the issue must be "patently obvious on the face of the record" to meet the first prong of the Strickland test. Id. Petitioner does not cite any New York State cases addressing CPL 700.65(4) that would put appellate counsel on notice that this argument was obvious. Objs. at 2–6; cf. Lynch, 789 F.3d at 314 ("A simple Shepard-search of that precedent would have revealed the recent Court of Appeals case applying the precedent in a highly analogous context."). Instead, Petitioner principally supports this interpretation of New York law by relying on non-controlling New York Practice Commentaries, propositions of law concerning wiretap applications from out of circuit courts, and a Court of Appeals case dealing with a different subsection of NY CPL 700. Objs. at 2–6.

As a result, it is not evident to this Court that the warrants exceeded thirty days under each new application in violation of New York State law, Dkt. No. 6 at 110–241. Likewise, it is not obvious that there was a lapse in the warrants between November 19, 2010, and April 30,

13

2011. <u>See</u> <u>id.</u>[2] It thus follows that appellate counsel was not ineffective for failing to raise these arguments, since they were not "patently obvious on the face of the record." <u>Lynch</u>, 789 F.3d at 312. Therefore, the Third Department's rejection of this ineffective assistance of counsel claim was not "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

Petitioner also "objects to the R&R's findings and conclusions concerning his claims that the February 11, 2011 warrant and prior warrants impermissibly transferred necessity and probable cause between multiple orders in one application of violation of NY CPL 700.20." Objs. at 5.

However, this argument was already made before the Magistrate Judge in Petitioner's initial habeas application. <u>See</u> Pet. Mem. at 14 ("The amended eavesdropping warrant was also [sic] because it exceeded the thirty-day limitations provided in NY CPL §700.10(2). Further, there was an impermissible transfer of necessity and/or probable cause between multiple orders combined in one application in violation of NY CPL §700.20(2) when a new application was submitted for Petitioner to be surveilled."). As a result, Petitioner is "simply relitigating a prior argument." <u>DiPilato</u>, 662 F. Supp. 2d at 340. Indeed, Petitioner re-asserts the same arguments, with the new additions including only citations to Ninth Circuit and Supreme Court cases supporting the relitigated argument that the statute at issue "did not allow for the transfer of

---

[2] Petitioner appears to further support this argument by stating that the Magistrate Judge declined to take issue with a "typographical error" from investigators that permitted the warrant to extend for over a year, an amount of time that would be in violation of NY CPL 700.10(2), which limits unrenewed warrants to thirty days. Objs. at 4. However, after a searching review of the Report-Recommendation, the Court does not see this acknowledgment from the Magistrate Judge anywhere, and Petitioner does not cite a page in the Report-Recommendation where it is found. <u>See generally</u> Objs. Accordingly, without more information, the Court cannot conclude that this argument has merit.

probable cause and necessity within multiple orders for extended and amended or new applications in one eavesdropping warrant application. [Petitioner] contends that the warrant in his case was defective and did not comply with CPL 700.20(2) that sets forth what each application separately must contain." Objs. at 6. Thus, because Petitioner reiterates his prior argument, the Court reviews this portion of the Report-Recommendation for clear error and finds none. Accordingly, the Court must reject the argument that the Third Department's denial of this ineffective assistance of counsel claim "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

### B. Appellate Counsel's Alleged Failure to Argue that Trial Counsel Had a Conflict of Interest

Petitioner next objects to the Report-Recommendation with respect to its analysis of whether appellate counsel was constitutionally ineffective for failing to raise trial counsel's alleged conflict of interest. Objs. at 11. Petitioner states: "The R. & R. says 'Petitioner fails to identify trial counsel's divergent obligations and any relevant conflicting interests.' This is wrong" because "[trial counsel] Goldberg represented a key witness against Petitioner in a criminal case in which the circumstances provided a basis for him to cross-examine his former client to [sic] as to advance the defendant's theory of the case—but this he failed to do." Id.

"Where a constitutional right to counsel exists, [the Supreme Court's] Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." Wood v. Georgia, 450 U.S. 261, 271 (1981) (citations omitted); see also United States v. Schwarz, 283 F.2d 76, 90 (2d Cir. 2002) ("A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel.") (quoting United States v. Blau, 159 F.3d 68, 74 (2d Cir. 1998)). In the Second Circuit, attorney conflicts

of interest are grouped into three general categories. See United States v. Williams, 372 F.3d 96, 102 (2d Cir. 2004).

"The first category describes those conflicts that are so severe that they are deemed *per se* violations of the Sixth Amendment. Such violations are unwaivable and do not require a showing that the defendant was prejudiced by his representation." Id. (citations omitted). The Second Circuit has "found such conflicts of interest only where trial counsel is not authorized to practice law and where trial counsel is implicated in the 'same or closely related criminal conduct' for which the defendant is on trial." Id. at 103 (citations omitted).

The second category, known as an "actual conflict of interest[,] occurs when the interests of a defendant and his attorney 'diverge with respect to a material factual or legal issue or to a court of action.' To violate the Sixth Amendment, such conflicts must adversely affect the attorney's performance." Id. (cleaned up). An actual conflict of interest is more than "a mere theoretical division of loyalties." Mickens v. Taylor, 535 U.S. 162, 171 (2002). "In Cuyler v. Sullivan, 446 U.S. 335, 349–50 (1980), the Court recognized multiple concurrent representations to give rise to an actual conflict." Hyman v. Brown, 927 F.3d 639, 670 n.30 (2d Cir. 2019). "Once an actual conflict is established, a defendant 'need not prove prejudice, but simply that a lapse in representation resulted from the conflict.'" Williams, 372 F.3d at 106 (quoting United States v. Malpiedi, 62 F.3d 465, 469 (2d Cir. 1995)). "A defendant can prove a lapse in representation by demonstrating 'that some plausible alternative defense strategy or tactic might have been pursued, and that alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" Id. (quoting Levy, 25 F.3d at 157).

"Lastly, a client's representation suffers from a *potential* conflict of interest 'if the interests of the defendant may place the attorney under inconsistent duties at some time in the

16

future.'" <u>Williams</u>, 372 F.3d at 106 (emphasis in original) (quoting <u>United States v. Kliti</u>, 156

F.3d 150, 153 n.3 (2d Cir. 1998). "To violate the Sixth Amendment such conflicts must result in

prejudice to the defendant." <u>Id.</u> at 102–03 (citing <u>United States v. Levy</u>, 25 F.3d 146, 152 (2d

Cir. 1994)).

The Magistrate Judge rejected Petitioner's arguments concerning his appellate counsel's

failure to raise his trial counsel's alleged conflict of interest. R. & R. at 30. The Magistrate Judge

found that: "Petitioner appears to claim that trial counsel's prior representation of the prosecution

witness caused a conflict between trial counsel's obligation to Petitioner and the prosecution

witness." R. & R. at 30–31 (citing Dkt. No. 1 at 12–14). She elaborated:

> Yet, Petitioner fails to identity trial counsel's divergent obligations
> and any relevant conflicting interest. Instead, Petitioner simply
> argues that an actual conflict existed between trial counsel once
> represented the prosecution witness in an unrelated matter and was
> tasked with cross-examining the prosecution in Petitioner's case.
> The Court is unconvinced these facts without more give risk to an
> actual conflict.

<u>Id.</u> at 31 (internal citations omitted).

The Magistrate Judge also rejected Petitioner's other conflict of interest theory. She

stated: "Petitioner has failed to demonstrate how trial counsel's alleged errors while cross-

examining the prosecution witness were caused by counsel's ongoing professional obligations to

the witness." <u>Id.</u> And the Magistrate Judge further concluded: "Petitioner does not claim trial

counsel's cross-examination was impaired because counsel's prior representation was

substantially related to Petitioner's case. Nor does Petitioner claim trial counsel's cross-

examination was deficient because he failed to utilize confidential information from the prior

representation that was relevant in Petitioner's case." <u>Id.</u> at 32 (internal citations omitted). But

"[r]ather, Petitioner argues trial counsel should have impeached the prosecution witness with

information that was publicly available and with questions directed at inconsistencies in the

witness's testimony." Id. (citing Dkt. No. 1-1 at 13–14). The Magistrate Judge further found:

"This alternative strategy—impeaching the witness with information that was publicly available

and inconsistencies in the witness's testimony—bears no obvious relation to trial counsel's

previous representation of the prosecution witness, and Petitioner makes no argument that they

do." Id.

The Court agrees with the Magistrate Judge. As an initial matter, Petitioner's first

objection in this section of his memorandum of law merely reiterates what he stated in his

Petition concerning the presence of a conflict of interest—a fact that even Petitioner concedes.

Specifically, Petitioner's first objection to the Magistrate Judge's conflict of interest analysis

includes the following language:

> In his moving papers before this Court and in the coram nobis,
> Petitioner carefully explained (Dkt. 2-2 at 10–12, Dkt. 12 at 5–8 and
> Dkt. 6-5 at 3237–42, 3253–58) how there was an actual conflict of
> interest and just how Goldberg utterly failed to take advantage of
> obvious means to impeach his former client. Petitioner showed that
> the conflict "actually affected the adequacy of his representation."
> Mickens v. Taylor, 535 U.S. 162, 171 (2002). Petitioner showed the
> means by which Goldberg could have confronted his former client
> . . . Petitioner has shown the conflict caused Goldberg to forgo a
> plausible defensive strategy.

Id. at 11. However, as discussed above, the Magistrate Judge expressly considered this argument

and found that Petitioner failed to show how a conflict of interest was present from these facts.

Put another way, Petitioner responds to the Magistrate Judge's alleged errors by merely referring

this Court to his previous papers. But simply reiterating an argument without specific objections

is insufficient to trigger de novo review. As a result, Petitioner is "simply relitigating a prior

argument." DiPilato, 662 F. Supp. 2d at 340. The Court thus reviews this portion of the Report-

Recommendation for clear error and finds none.

Next, Petitioner states: "The Magistrate is also wrong when she says that we only say Goldberg should have 'impeached the prosecution witness with information that was publicly available and with questions directed at inconsistencies in the witness's testimony.'" Objs. at 10–11 (citing R. & R. at 32). Instead, according to Petitioner:

> Much of what Goldberg could have used to cross Mansaray related to information he imparted to the trial court about the circumstances under which Mansaray was arrested in the case in which Goldberg represented him, including how Goldberg could have, but failed to, cross-examine Mansaray concerning his possession of marijuana and cash at a time when he had testified he was only earning "a little over $9 an hour.["]

Id. at 11. The Court nevertheless agrees with the Magistrate Judge. As the Magistrate Judge correctly found, Petitioner has not demonstrated how trial counsel's alleged errors while cross-examining the prosecution witness were caused by counsel's ongoing professional obligations to the witness. LoCascio, 395 F.3d at 56–57. For instance, this is not a case where an actual conflict stemmed from the attorney-client privilege barring effective impeachment from an attorney's previous representation. Malpiedi, 62 F.3d at 469. Nor is this a case where counsel's prior representation was substantially related to Petitioner's case. Quinones v. Miller, No. 01-CV-10752, 2005 WL 730171, at *6 (S.D.N.Y. Mar. 31, 2005), aff'd, 224 Fed. App'x 44 (2d Cir. 2007) (explaining that "several courts have held that a petitioner is relieved of his burden to show prejudice where (1) counsel's prior representation was substantially related to his representation of the petitioner, or (2) counsel learned confidential information from the prior representation that was relevant to the petitioner's case").

Moreover, trial counsel's representation of the witness at issue occurred in "2007 or 2008" which resulted in an "ACD or dismissal." Dkt. No. 1-1 at 5. Thus, "Petitioner's preferred defense strategy could not possibly have been materially adverse to the interests of [the

19

prosecution witness], as the strategy could have no practical adverse effect on [the witness]."

Medrano v. United States, No. 06-CR-0061, 2015 WL 4522857, at *5 (S.D.N.Y. July 27, 2015),

aff'd, 691 F. App'x 663 (2d Cir. 2017). "Thus . . .  the successive representation did not present

an actual conflict." Id. As a result, the Court is unpersuaded that "appellate counsel should have

seen [that the alleged conflict] was plain as day in the record." Objs. at 12. If Petitioner's

preferred defense strategy could not have had an adverse effect on the prosecution's witness, it

follows that a conflict of interest from trial counsel's prior representation of this witness is likely

absent.

Petitioner's remaining objections rehash arguments made before the Magistrate Judge

and state in a conclusory manner that a conflict was present despite the Magistrate Judge's

findings to the contrary. Id. at 12–14. These objections are therefore subject to clear error review.

Having found no clear error, the Court adopts the Magistrate Judge's conclusions regarding the

absence of a conflict of interest.

Petitioner has accordingly failed to demonstrate that appellate counsel was ineffective for

failing to argue trial counsel had an actual conflict of interest that adversely affected his

performance. See Lynch, 789 F.3d at 311, 313. Consequently, the Third Department's denial of

Petitioner's ineffective assistance of counsel claim was not contrary to—and did not involve an

unreasonable application of—clearly established federal law. See 28 U.S.C. § 2254(d)(1).

### C.  Appellate Counsel's Failure to Argue Trial Counsel Was Ineffective for Not Raising the Indictment's Facial Deficiencies

Petitioner also objects to the Report-Recommendation's analysis of his claim concerning

the defectiveness of five counts in the indictment. Objs. at 6. According to the Magistrate Judge,

appellate counsel was not constitutionally ineffective for failing to argue that trial counsel should

have moved to dismiss these counts (225, 226, 227, 228, and 229).

But Petitioner objects. Petitioner states: "The R&R correctly concludes that 'the indictment does not plead particular effect jurisdiction, it lacks any allegation that Petitioner's actions under Counts 225 through 229 caused a concrete and identifiable injury to Albany County, and a searching review of the record reveals no clarification of the prosecution's theory of particular effect jurisdiction in a bill of particulars.'" Id. (quoting R. & R. at 19). From this admission, Petitioner asserts that the "R & R agrees that the [five] errant counts were defective." Id. However, Petitioner objects to the Magistrate Judge's subsequent analysis, which found that Petitioner did not suffer prejudice from how appellate counsel handled these facts. The Magistrate Judge stated that the prejudice analysis required Petitioner to identify an appellate case that dismissed an indictment solely for failing to plead particular effect jurisdiction, regardless of whether evidence of particular effect jurisdiction was put before the grand jury. See R. & R. at 20–21. According to Petitioner, however, all that is required to show prejudice is "a reasonable probability" that his argument concerning the indictment's defectiveness would have succeeded before the Court of Appeals. See Objs. at 6. Petitioner argues that he has met this standard. Petitioner thus maintains that the Magistrate Judge employed the wrong legal standard, and "improperly grafted . . . a burden on Petitioner to point to a state appellate case in which the obvious facial defect [of an indictment] was struck." Id. at 7. Lastly, Petitioner objects to the Magistrate Judge's "erroneous finding that Petitioner's claim is not grounded in a challenge to the prosecution's proof before the grand jury." Id. at 6.

Therefore, Petitioner primarily objects to the Magistrate Judge's Right to Effective Assistance of Counsel prejudice analysis in light of the New York State Law governing where a defendant must be tried. As such, the Court will conduct a de novo review of this specific portion of the Report-Recommendation. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

As discussed, the Court must examine whether appellate counsel was ineffective for failing to argue that trial counsel should have moved to dismiss Counts 225, 226, 227, 228, and 229. This requires the Court to examine whether appellate "counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Lynch, 789 F.3d at 311. "The claim whose omission forms the basis of an ineffective assistance of counsel claim may either be a federal-law or a *state-law claim*." Id. (emphasis added). Moreover, Petitioner must also show that "there is a reasonable probability that it would have succeeded before the state's highest court . . . [which] may be made with the benefit of hindsight." Id. (citation and quotations omitted). The Supreme Court has stated that a "reasonable probability is a probability sufficient to undermine confidence in the outcome." Hinton v. Alabama, 571 U.S. 263, 275 (2014). With these standards in mind, the Court now turns to New York State law concerning where a defendant must be tried.

The New York Court of Appeals has held: "At common law and under the State Constitution, a defendant has the right to be tried in the county where the crime was committed unless the Legislature has provided otherwise." People v. Zimmerman, 9 N.Y.3d 421, 426–27 (N.Y. 2007) (citations omitted). Importantly: "The burden is on the People to prove by a preponderance of the evidence that the county where the crime is prosecuted is the proper venue because either the crime was committed there or one of the statutory exceptions is applicable." People v. Ribowski, 77 N.Y.2d 284, 291–92 (N.Y. 1991). Therefore, "[a]bsent [a] statutory exception, . . . . the territorial unit for criminal prosecutions is [a] county." Zimmerman, 9 N.Y.3d 421 at 427 (quoting People v. Fea, 47 N.Y.2d 70, 75 (N.Y. 1979)) (alteration in original).

One statutory exception to this right is known as "particular effect" jurisdiction. NY CPL § 20.30(2)(c). Under this exception, a defendant may be convicted in a criminal court of a

particular county "[e]ven though none of the conduct constituting the offense may have occurred within such county" as long as "[s]uch conduct had, or was likely to have, a *particular effect* upon such county . . . and was performed with intent that it would, or with knowledge that it was likely, to have such particular effect therein." Id. (emphasis added).

The Court of Appeals has stated that "[a] 'particular effect' within the county is defined as a 'materially harmful impact upon the governmental processes or community welfare of' the county seeking to assert jurisdiction." Matter of Steingut v. Gold, 42 N.Y.2d 311, 318 (N.Y. 1977) (citation omitted). The Court of Appeals subsequently elaborated on this exception, stating that material harm "must be more than minor or incidental, and the conduct must harm 'the well being of the community as a whole,' not merely a particular individual.'" Matter of Taub v. Altman, 3. N.Y.3d 30, 33–34 (N.Y. 2004) (citing Fea, 47 N.Y.2d at 77). Moreover, "particular effect jurisdiction is to be *applied only in limited circumstances*, [and] *it has been rarely invoked*." Id. at 36 (emphasis added)

The rare circumstances identified as bases for particular effect jurisdiction by the Court of Appeals include "when, for example, a defendant's out-of-county conduct has interfered with the county's courts or administration of justice; has exposed a large number of county residents to a specific harm; has caused a physical intrusion upon the county; or has involved the theft of funds from the county itself." Id. Other examples by the Court of Appeals for this "particular and readily identifiable," form of jurisdiction, id. — would be if, "for example, a person commits criminal mischief by maliciously blowing up a dam in Putnam County near the Westchester County line, thus flooding some Westchester territory." Id. The Court of Appeals has repeatedly rejected attempts by prosecutors to expand this narrow statutory exception. See Altman, 3 N.Y.3d 30, 33–34; Fea, 47 N.Y.2d at 77; Steingut, 42 N.Y.2d at 318.

The facts of <u>Steingut</u> are illustrative. There, defendants were prosecuted in Kings County, New York. The alleged criminal conduct emanated from a meeting in *New York* County, where the defendants allegedly discussed and later transacted a corrupt election scheme in violation of New York election law. <u>Steingut</u>, 42 N.Y.2d at 313–14. The Kings County prosecutor relied on "particular effect jurisdiction" to initiate the prosecution. The prosecutor argued that because the election at issue was to take place in Kings County, particular effect jurisdiction was met. <u>Id.</u> at 317. But the Court of Appeals rejected the argument. The court stated: "The type of injury or offense contemplated by the statute must be perceptible and of the character and type which can be demonstrated by proof before a Grand Jury." <u>Id.</u> Importantly, the Court of Appeals chided the prosecution, stating, "in the most conclusory fashion, the indictment simply states 'the defendants' conduct had and was likely to have a particular effect on Kings County.' Certainly the invoking of the extraordinary injured forum jurisdictional statute requires the specification of a more concrete and identifiable injury." <u>Id.</u> at 318. Finally, in rejecting Kings County's jurisdictional authority, the Court of Appeals concluded:

> [E]ven if we were to presume that the statute could have application in connection with an offense of this sort, the county seeking to prosecute would be required to establish before the Grand Jury both the materially harmful impact upon the governmental processes of that county and that the criminal activity in question was performed with the intent or knowledge that such a materially harmful impact was likely to occur in that county. In the case now before us, the prosecutor failed to put before the Grand Jury any evidence either that there was a materially harmful impact upon the governmental processes of Kings County or that the allegedly criminal activity was performed with the intent or knowledge that such a particular effect would occur in that county.

<u>Id.</u> Consequently, the Court of Appeals held that the conclusory assertion of particular effect jurisdiction is insufficient to sustain an indictment in the absence of "specification" and a "concrete and identifiable injury." <u>Id.</u>

Conversely, in Taub, the Court of Appeals rejected a facial challenge to an indictment because the circumstances differed from Steingut. Like in Steingut, the indictment in Taub "merely asserted without specificity that the charged conduct 'had and was likely to have a particular effect [on the target county with the requisite intent],'" but unlike in Steingut, "the bill of particulars provided by the People set forth in detail both the prosecution's theory of venue and specific facts in support of their contention . . . that there had been a particular effect." Taub, 3 N.Y.3d at 40. Thus, the Court of Appeals reiterated that prosecutors must plead specificity and concrete injuries to the target county, but the indictment need not state those specifications if a bill of particulars provides the requisite specificity. With this precedent in mind, the Court now turns to the facts in the present case.

Here, the Court concurs with the Magistrate Judge that Respondent misrepresents that the relevant counts in the indictment contain a preamble. R. & R. at 18. As the Magistrate Judge points out, "Count 1 has a preamble, but nothing in the indictment suggests the preamble from Count 1 applies to the rest of the indictment." Id.; see also Dkt. No. 6-2 at 8. This is a critical detail because Respondent supports his theory of particular effect jurisdiction (and presumably the Third Department accepted this theory) by incorrectly stating that Petitioner's "general scheme was set forth in the preamble of the indictment, which explained that the conspiracy existed to obtain, control, and sell cocaine in, among others, Albany, Orange, and Schenectady counties." Dkt. No. 5 at 28.

Likewise, the Court also agrees with the Magistrate Judge regarding the indictment's blatant absence of specificity concerning pleading particular effect jurisdiction. R. & R. at 18. Counts 225 through 229 accuse Petitioner of committing several drug crimes in Schenectady County on February 27, 2011. Dkt. Nos. 6-2 at 104–06. However, Petitioner was prosecuted for

these crimes in *Albany* County. Tellingly, Respondent concedes that the indictment "does not explicitly plead the statutory 'particular effect' language." Dkt. No. 5-1 at 30. The Court also concurs with the Magistrate Judge that a searching review of the record reveals no bill of particulars, and Respondent does not advance any argument whatsoever that a bill of particulars clarified his unpled theory of particular effect jurisdiction. Cf. Altman, 3 N.Y. 3d at 39. Concerningly, unlike the prosecution in Steingut, the prosecution here did not even state in "the most conclusory fashion" that particular effect jurisdiction was met; it just simply omitted the threshold requirement altogether, thus robbing Petitioner of his right to be tried in the county where he committed the alleged crimes.

The Court further agrees with the Magistrate Judge that "[t]hese facts should have been obvious to appellate counsel, who should have realized this was a significant issue." R. & R. at 18 (citing Lynch, 789 F.3d at 311). Therefore, the Court concurs with the Magistrate Judge's findings that

> The indictment does not plead particular effect jurisdiction, it lacks any allegation that Petitioner's actions under Counts 225 through 229 caused a concrete and identifiable injury to Albany County, and a searching review of the record reveals no clarification of the prosecution's theory of particular effect jurisdiction in a bill of particulars. Petitioner's appellate counsel could have argued for dismissal of Counts 225 through 229 based on a claim of ineffective assistance of trial counsel. Indeed, the language in Steingut and Taub would have supported such an argument.

Id. at 19. Accordingly, the Court concurs with the Magistrate Judge that appellate "counsel's performance was deficient" for Sixth Amendment purposes. Strickland, 571 U.S. at 682. "[T]he issue [of jurisdiction] was patently obvious on the face of the record." Lynch, 789 F.3d at 314. Appellate counsel was thus constitutionally deficient for omitting this "patently obvious" failure of trial counsel because appellate counsel pursued issues that were "significantly weaker." Id. at 315. Moreover, appellate "[c]ounsel did not face a choice between . . . arguments," id. at 314, he

simply omitted an obvious argument that trial counsel failed to raise, which further advises in favor of finding that Petitioner's claim satisfied the first Strickland prong.

However, despite the obvious defect in the indictment that Steingut and Taub have identified as a basis for dismissal, the Magistrate Judge (and presumably the Third Department) declined to find a constitutional violation because she found that Petitioner failed to satisfy the prejudice prong of the Strickland test. The Magistrate Judge explained that Steingut and Taub alone were insufficient to support an inference that there would be a reasonable probability that Petitioner's argument would succeed before the Court of Appeals. See R. & R. at 19–20. The Magistrate Judge explicated:

> Petitioner has failed to cite a single Court of Appeals or Appellate Division case—and the Court is unaware of any—dismissing an indictment on the sole grounds that it did not adequately plead particular effect jurisdiction. When appellate courts in New York dismiss indictments for lack of particular effect jurisdiction, they appear to rely—in one way or another—on the prosecution's failure to prove jurisdiction before the grand jury. See, e.g., Taub, 3 N.Y.3d at 34–35; Steingut, 42 N.Y.2d at 318; Gentner, 193 A.D.3d at 1131. Petitioner's second layered ineffective assistance of counsel claim is not grounded in a challenge to the prosecution's proof before the grand jury—it rests solely on a challenge to pleading defects in the indictment.

Id. at 20. The Magistrate Judge further supported this argument by citing a Second Department decision interpreting Steingut which stated that Steingut "does not stand for any particular pleading requirements to be met by an indictment relying upon CPL 20.40(2)(c) for geographic jurisdiction." Id. (quoting People v. Guzman, 153 A.D.3d 1273, 1276 (N.Y. App. Div. 2017)). From this analysis, she concluded: "The Court is unconvinced there is a reasonable probability that such an argument would have been successful before the Court of Appeals." Id. at 20.

The Court respectfully disagrees with the Magistrate Judge. As an initial matter, the Court disagrees with the legal standard articulated by the Magistrate Judge. The Magistrate

Judge rejected Petitioner's argument because she was "unaware of any [case] dismissing an indictment on the sole grounds that it did not adequately plead particular effect jurisdiction." R. & R. at 20.[3]

However, Petitioner is correct that this was an "improper[] graft . . . onto th[e] . . . standard" imposed by the Supreme Court. Objs. at 7. The standard described by the Magistrate Judge is more akin to the Supreme Court's articulation of qualified immunity, where a factually similar case must typically foreshadow a certain outcome. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). But in the ineffective assistance of counsel context, once deficient performance is established, the Supreme Court's prejudice analysis requires petitioners only to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 571 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Hinton, 571 U.S. at 275. The Magistrate Judge declined to address what reasonable probability means under Supreme Court precedent, as described in Strickland and Hinton. See R. & R. at 14–21. Instead, she impermissibly heightened the prejudice standard by requiring Petitioner to present a specific case with identical facts that she said did not exist. However, the Supreme Court made clear in Hinton and Strickland that a reasonable probability does not require a specific case on point to demonstrate a constitutional violation; prejudice will be found if the "probability [is] sufficient to undermine confidence in the outcome." Strickland, 571 U.S. at 694.

---

[3] This appears to be because the Magistrate Judge mistakenly conflated the "reasonable probability" test from Strickland with the "fairminded jurist" language from Richter, which resulted in a single novel test for Sixth Amendment ineffective assistance of counsel claims. This error created a *much* higher bar for Petitioner to clear than is required under Strickland.

Using this incorrect legal standard, the Magistrate Judge next stated: "When appellate courts in New York dismiss indictments for lack of particular effect jurisdiction, they appear to rely—in one way or another—on the prosecution's failure to prove jurisdiction before the grand jury." Id. And because Petitioner supposedly challenges only the indictment's pleading defects, the Magistrate Judge rejected Petitioner's claim. The Court disagrees with this reasoning for several reasons.

First, the Court disagrees with the Magistrate Judge's narrow characterization of Petitioner's claim. The Court does not agree that Petitioner's claim is only challenging the pleading defects of the indictment. Instead, Petitioner is raising counsel's failure to challenge the prosecution's inability to prove jurisdiction before the grand jury. The Petition states: "Trial counsel failed to move to dismiss the improper counts in his pretrial motion pursuant to NY CPL 210.20(1)(h). Appellate counsel failed to raise this meritorious claim on appeal." Pet. Mem. at 13. The pretrial motion that Petitioner says should have been raised would have moved to dismiss the indictment by arguing that particular effect jurisdiction did not lie in Albany County because the prosecution failed to establish particular effect jurisdiction before the grand jury, just as these pretrial motions routinely do. See, e.g., Steingut, 42 N.Y.2d at 314; Taub, 3 N.Y.3d at 34. In fact, Petitioner alludes to the fact that this is the basis of his challenge, stating in his Petition (directly before mentioning counsel's failure to file the motion) that "[t]he only means the state legislature has provided [to be tried in the county in which the crime was committed] is to *permit the grand jury to allege* that the offense conduct had a 'particular effect' on the county in which the charge is laid pursuant to NY CPL 20.40(2)(c)." Pet. Mem. at 13 (emphasis added). Therefore, contrary to the Magistrate Judge's suggestion that Petitioner is not challenging the prosecution's failure to prove jurisdiction before the grand jury, this statement from Petitioner

heavily suggests otherwise. Indeed, it appears that Petitioner envisioned that trial counsel would challenge the prosecution's glaring failure to prove jurisdiction before the grand jury; and when that did not happen, it appears he envisioned that appellate counsel would have raised trial counsel's constitutional ineffectiveness in failing to do so. Therefore, the Court cannot agree with the Magistrate Judge's narrowly construed interpretation of Petitioner's challenge. And as discussed above, the Court of Appeals has repeatedly affirmed the dismissal of indictments when prosecutors fail to prove particular effect jurisdiction before the grand jury. See Steingut, 42 N.Y.2d at 316 (affirming the Appellate Division's dismissal of an indictment for lack of particular effect jurisdiction, stating that the indictment was "defective on its face"); Zimmerman, 9 N.Y.3d at 4 (affirming a pretrial motion dismissing an indictment that "argued that 'particular effect' venue . . . did not lie in New York County") (internal citation omitted). The Court thus agrees with Petitioner that, in light of the well-established New York Law on particular effect jurisdiction, appellate counsel's performance clearly "undermined confidence in the outcome" of the state court proceedings. Strickland, 571 U.S. at 694. Accordingly, prejudice in these circumstances is glaringly apparent because if counsel had raised this argument "on appeal, there is a reasonable probability that it would have succeeded before the state's highest court." Lynch, 789 F.3d at 311 (citations omitted).

Second, even assuming *arguendo* that Petitioner is challenging only the pleading defects of the indictment, his claim would likely have succeeded before the Court of Appeals. A facial challenge to an indictment's failure to plead particular effect jurisdiction succeeded before the Court of Appeals in Steingut; the only minor difference in procedure there (by how the Magistrate Judge construed the Petition at least) was that the defendant challenged the prosecution's ability to prove jurisdiction before the grand jury. Steingut, 42 N.Y.2d at 318. And

Taub further confirmed that facial challenges to indictments lacking specific pleading in the particular effect jurisdiction context could be successful without an accompanying bill of particulars pleading the jurisdiction. Taub, 3 N.Y.3d at 40. Likewise, this Court is unaware of any Court of Appeals case that differentiates between facial challenges to an indictment's particular effect pleading defects, versus a facial challenge to the prosecution's failure to prove particular effect jurisdiction before the grand jury. The Magistrate Judge does not provide a case delineating this distinction either. R. & R. at 19–20.

Third, the Magistrate Judge relies on the Second Department's decision in People v. Guzman to support her position. In particular, the Magistrate Judge relies on Guzman's interpretation of NY CPL 20.30(2)(c), stating that Steingut "does not stand for any particular pleading requirements to be met by an indictment relying upon CPL 20.40(2)(c) for geographic jurisdiction." Guzman, 153 A.D.3d at 1275. From this quote, the Magistrate Judge casts doubt that Petitioner's argument would have been successful before the Court of Appeals because she states that Guzman holds that particular effect jurisdiction does not mandate particular pleading requirements for geographic jurisdiction.

Yet Guzman is inapposite. The quote relied on from Guzman is plainly not relevant to the facts here. The indictment in Guzman directly alleged that the offense took place in the county where the indictment was charged. Id. Here, by contrast, there was plainly no mention of particular effect jurisdiction in the indictment *at all* for counts 225–229. See Dkt. No. 6-2. As a result, Guzman does not support the Magistrate Judge's argument because there was no indication from the indictment that it relied on CPL 20.40(2)(c), a fact that even Respondent concedes. Dkt. No. 5-1 at 30; see also id. Adopting the Magistrate Judge's leap that a particular pleading requirement is not required under NY CPL 20.40 if the prosecution specifically pleads

the requirement, to dispensing with the requirement altogether, would flout the holdings of

Steingut and Taub, as well as the plain language of NY CPL 20.40. Consequently, the Court

must reject the Magistrate Judge's conclusion. It is evident to the Court that Petitioner suffered

prejudice because, "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." Strickland, 571 U.S. at 694.

This is not the end of the inquiry. The Third Department denied Petitioner's coram nobis

petition without opinion. "In that circumstance, [courts] must still defer to its decision, and deny

relief if there is any reasonable basis on which it can be found consistent with the governing

precedent." Lynch, 789 F.3d at 320 (citing Richter, 562 U.S. at 102, 131). The Court has

"applied that standard here." Id. As mentioned above, the Court has "considered every argument

that Respondent has offered and [the ones the Court] could hypothesize." Id. Respondent

principally argued that the preamble (which this Court and the Magistrate Judge found non-

existent) to Counts 225–229 supported the indictment's sufficiency, but both this Court and the

Magistrate Judge rejected this misleading argument. In addition, the Court considered and

rejected the lengthy prejudice prong analysis hypothetically relied on in the State Court decision,

which the Magistrate Judge raised.[4]

Therefore, "[h]aving considered these arguments, [the Court] finds[s] no basis on which

to conclude that a court could reasonably determine that failing to raise a clearly meritorious

claim of" an indictment's failure to plead particular effect jurisdiction "that would likely lead to

reversal of . . . [several] counts of conviction—accounting for a significant increase in the

defendant's sentence—while raising other, weaker arguments can be considered a strategic

---

[4] The Court hypothesizes that the Third Department would have raised the argument concerning prejudice that this Court has rejected.

choice within the range of decisions that constitute professional competent assistance." Id. at 319. There is a reasonable probability, "that had counsel raised the [facial deficiency] issue, the outcome of the appeal would have been different." Id. (citing Richter, 562 U.S. at 101, 131). "The Appellate Division's denial of [Petitioner's] coram nobis petition was therefore objectively unreasonable." Id.

In sum, the Court agrees with the Magistrate Judge that Petitioner's appellate counsel "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 689. Appellate counsel "omitt[ed] significant and obvious issues while pursuing issues that were clearly and significantly weaker." Lynch, 789 F.3d at 311. However, the Court disagrees with the Magistrate Judge concerning the prejudice prong of the Strickland test. The Court finds that there was a reasonable probability that, but for appellate counsel's error—in this case, the failure to argue that trial counsel was ineffective for failing to raise the glaringly apparent argument concerning the indictment's defective counts—Petitioner's outcome would have been different. Strickland, 466 U.S at 694. This error plainly "undermine[d] confidence in the outcome." Hinton, 571 U.S. at 275. Thus, Petitioner suffered prejudice from appellate counsel's performance under Strickland.

### D. Remedy for Petitioner

Having found that the Petition should be granted for Petitioner's claim with respect to the indictment's facial insufficiency concerning Counts 225–229, the Court must fashion an appropriate remedy. Congress has authorized federal habeas courts to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. Additionally, the Second Circuit has stated that: "In general, the appropriate remedy for ineffective assistance of appellate counsel is to grant a new appeal." Lynch, 789 F.3d at 320 (citations omitted).

Here, however, the factual circumstances are much more unusual than the run-of-the-mill ineffective assistance of appellate counsel case contemplated by Lynch. Unlike the typical ineffective assistance of appellate counsel case, the underlying failure of counsel stemmed from an indictment containing obvious defects that never pleaded jurisdiction on five counts. Plainly, the prosecution lacked the geographic jurisdiction to initiate the prosecution against Petitioner on five of the seven remaining counts for which he was convicted. See Steingut, 42 N.Y.2d at 318 ("[The] County lacked the power to indict and prosecute these petitioners because jurisdiction to proceed was not conferred on it by virtue of the injured forum statute since that statute does not apply in this type of case, and even it if did, there was no showing before the Grand Jury of the elements requisite to the triggering of its provisions."). Thus, the usual remedy envisioned by the Second Circuit in these circumstances—a new appeal—appears inapt given that the prosecution never had the authority to initiate a prosecution against Petitioner on Counts 225, 226, 227, 228, and 229 before the Albany County grand jury. See id. These deficiencies ultimately resulted in the deprivation of Petitioner's Sixth Amendment Right to Effective Assistance of Appellate Counsel and his New York State right to be tried in the county where he committed his alleged crimes.

Petitioner's sentence also complicates the question of whether Petitioner is serving a sentence on the flawed counts that this Court has already identified. Specifically:

> [Petitioner] received a prison term of 5 to 15 years on count 1 to run concurrently with all sentences. Counts 225 and 226 were concurrent to each other with a longest term of eight years in prison. Consecutive thereto, but concurrent with each other, were counts 227, 228 and 229, with a longest term of 12 years in prison. Consecutive thereto and consecutive to each other were the remaining counts — 232, 244 and 245 — with each being three years in prison.

Whitehead, 130 A.D.3d at 1143 n.1. Thus, the only remaining unflawed counts include Counts 1 and 232, given that Counts 244 and 245 have already been reversed by the Third Department. See id.

In light of the unusual circumstances stemming from the prosecution lacking the geographic jurisdiction to initiate the prosecution against Petitioner concerning Counts 225–229, and the fact that Petitioner has already served more than a decade of his sentence, the Court exercises its authority pursuant to 28 U.S.C. § 2243 to "dispose of the matter as law and justice require" and vacates Petitioner's flawed convictions stemming from facially defective Counts 225, 226, 227, 228 and 229 of the indictment. See Aparicio v. Artuz, No. 97-CV-2183, 2000 WL 713744 (E.D.N.Y. May 25, 2000) (vacating constitutionally deficient convictions that stemmed from an ineffective assistance of counsel claim on a partial grant of a writ of habeas corpus, but reversed on the merits of the claim rather than on the vacatur remedy), aff'd in part, rev'd in part, 269 F.3d 78 (2d Cir. 2001).; cf. Robinson v. Graham, 671 F. Supp. 2d 338, 356 (N.D.N.Y. 2009) ("[I]n an absence of a retrial, adjustment of the sentence eliminating the sentence imposed as a result of [petitioner's] conviction on that count, is an appropriate remedy" in a habeas proceeding raising successful ineffective assistance of counsel claims.).

In light of the five vacated counts, the Court remands this action to the Albany County Court for proceedings consistent with this Memorandum-Decision and Order. The Court anticipates a prompt resolution of this action.[5]

---

[5] Because Petitioner's other claims challenge only convictions that this Court has vacated, Pet. Mem. at 13, 15, the Court need not reach the merits of these arguments. See R. & R. at 21, 23 (discussing how Petitioner's arguments concerning the prosecution's alleged failure to prove the aggregate weight of the drugs challenged Counts 225, 227, and 228 of the indictment, and Petitioner's challenge to the trial court permitting the prosecution's mid-trial motion to amend the indictment concerns counts 227, 228, and 229).

E.  **Certificate of Appealability**

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court." 28 U.S.C. § 2253(c)(1); see also Fed. R. App. P. 22(b)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Hohn v. United States, 524 U.S. 236, 240 (1998). Petitioner's claims unrelated to the facial defectiveness of counts 225–229 of the indictment have not satisfied this standard. Accordingly, the Court declines to issue a Certificate of Appealability. Finally, The Clerk is respectfully directed to enter Judgment pursuant to Fed. R. Civ. P. 58(b)(2).

V.    **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation, (Dkt. No. 13), is **ADOPTED in part** and **REJECTED in part**; and it is further

**ORDERED**, that the Report-Recommendation, (Dkt. No. 13), is **REJECTED** to the extent it recommended denying federal habeas relief for Petitioner's Sixth Amendment claim concerning appellate counsel's failure to argue that trial counsel gave constitutionally deficient representation for not moving to dismiss the indictment's facially defective counts that include 225, 226, 227, 228, and 229 of the indictment; and it is further

**ORDERED**, that the Report-Recommendation, (Dkt. No. 13), is otherwise **APPROVED and ADOPTED**; and it is further

**ORDERED**, that the Petition, (Dkt. No. 1), is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that the Petition, (Dkt. No. 1), is **GRANTED** to the extent it seeks federal habeas relief pursuit to the Sixth Amendment's Right to Effective Assistance of Appellate Counsel for appellate counsel's failure to argue that trial counsel gave constitutionally deficient representation for not moving to dismiss the indictment's facially defective counts that include 225, 226, 227, 228, and 229 of the indictment; and it is further

**ORDERED**, that Petitioner's convictions for (1) criminal possession of a controlled substance in the second degree (Count 225), (2) criminal possession of a controlled substance in the third degree (Counts 226 and 229), (3) criminal sale of a controlled substance in the first degree (Count 227), and criminal possession of a controlled substance in the first degree (Count 228) are **VACATED**; and it is further

**ORDERED**, that the Petition (Dkt. No. 1) is otherwise **DENIED**; and it is further

**ORDERED**, that no Certificate of Appealability be issued. See 28 U.S.C. § 2253(c)(1); and it is further

**ORDERED**, that this action is **REMANDED** to the Albany County Court for proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk is respectfully directed to enter Judgment pursuant to Fed. R. Civ. P. 58(b)(2); and it is further

**ORDERED**, that the Clerk is directed to serve a copy of this Memorandum-Decision and Order on all parties, the Albany County Court, and the Third Department, in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     May 19, 2023
                  Albany, New York

LAWRENCE E. KAHN
United States District Judge